Kenneth Earl JACKSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 115–84.

Court of Criminal Appeals of Texas,
En Banc.

July 24, 1985.

David K. Chapman (court appointed), Richard D. Woods (court appointed), San Antonio, for appellant.

Sam D. Millsap, Jr., Dist. Atty. & Linda C. Anderson, Hipolito Canales, Jr. & John J. Horn, III, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

This is an appeal from a conviction for delivery of heroin, a first degree felony. See Art. 4476–15, § 4.03(b), V.A.C.S. Punishment, enhanced by proof of a prior felony conviction, was assessed by the jury at twenty-five years confinement in the Texas Department of Corrections.

This appeal arises from appellant's second trial for the same offense. At the first trial, appellant was convicted of delivery of heroin, found to be a repeat offender, and punishment was assessed by the court at the statutory minimum allowable upon proof of a prior felony conviction, fifteen years confinement in the Texas Department of Corrections. See V.T.C.A. Penal Code, § 12.42(c). Pursuant to former Art. 40.09(12), V.A.C.C.P., however, the trial court subsequently granted appellant a new trial.

In January, 1981, appellant was retried and again convicted of delivery of heroin. Appellant pled true to the enhancement allegation and elected to have the jury assess punishment pursuant to Art. 37.07, § 2(b)(2), V.A.C.C.P. Punishment, enhanced by proof of a prior felony conviction, was assessed by the jury at twenty-five years confinement in the Texas Department of Corrections.

On direct appeal, appellant attacked the sufficiency of the evidence and, in three grounds of error, alleged trial counsel had rendered ineffective assistance. On June 30, 1982, the San Antonio Court of Appeals held that the evidence was sufficient to sustain the conviction, but abated the appeal in order that an evidentiary hearing might be held to develop facts regarding appellant's first ground of error. *Jackson v. State*, 640 S.W.2d 323 (Tex.App.—San Antonio 1982, pet. ref'd.). Appellant's first ground of error alleged that trial counsel had rendered ineffective assistance by failing to sufficiently advise him as to the consequences of electing to have the jury assess punishment.

On August 26, 1983, an evidentiary hearing was held, developing facts germane to appellant's claim of ineffective assistance. The instructions from the court of appeals, as read to the parties by the trial judge, were:

> "A hearing should be conducted in the trial Court to establish whether *objective information could have been made [sic] to the trial court* which might have resulted in the imposition of a more severe punishment than the 15 years assessed at the first trial, and thereby determine whether there was a reasonable basis for trial counsel's action." [Emphasis supplied]

The State had full opportunity at that hearing to present all "objective information" it could, including a continuance to bring an additional witness.

On November 9, 1983, with one justice dissenting as to the remedy, the San Antonio Court of Appeals held that appellant's trial counsel had rendered ineffective assistance of counsel and reversed the conviction. *Jackson v. State*, 662 S.W.2d 74 (Tex. App.—San Antonio 1983). The court of appeals noted that because appellant was sentenced by the court at his first trial, absent objective information concerning identifiable conduct on the part of the appellant occurring after the time of the original sentence, the trial judge could not impose a more severe sentence than the minimum of 15 years under *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and its progeny. By electing to have the jury assess punishment, however, appellant exposed himself to the full range of punishment applicable to a repeat offender (15 to 99 years, or life). See *Chaffin v. Stynchcombe*, 412

U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973). *Upon reviewing the record of the evidentiary hearing,* the court of appeals held that there was *no objective information concerning identifiable conduct of the appellant which would have allowed the trial judge to impose a more severe sentence;* that appellant's trial counsel failed to sufficiently advise him as to the consequences of electing to have the jury assess punishment; and that, even though effectiveness of counsel is to be judged by the totality of the representation, this single error so permeated the proceedings that appellant's counsel was ineffective as a matter of law.

We granted the State's petition for discretionary review to examine the court of appeals' holding that a single error may constitute ineffective assistance as a matter of law and to review the State's contention that there was a tactical reason for appellant's election because there existed objective information of identifiable conduct by appellant occurring after his first trial sufficient to authorize a more severe sentence by the trial judge. We affirm the decision of the court of appeals.

In *North Carolina v. Pearce,* supra, a defendant, whose conviction was reversed on appeal, received a longer sentence from a judge on retrial than that originally imposed by a judge in the first trial. The Supreme Court held that it would be a violation of the Due Process Clause of the Fourteenth Amendment for a trial court to impose a harsher sentence upon a reconvicted defendant for the explicit purpose of punishing a defendant for successfully attacking his original conviction. Noting the difficulty in proving a retaliatory motive and actual vindictiveness in any given case, the Court found it necessary to establish a prophylactic rule to protect a defendant from the reasonable apprehension of vindictiveness that could deter him from appealing his conviction:

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." (Footnote ommitted.)

In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal."

*Id.,* 395 U.S. at 725–26, 89 S.Ct. at 2080–81. Since its inception, this Court has frequently applied the doctrine of *Pearce. Lechuga v. State,* 532 S.W.2d 581 (Tex.Cr.App.1976); *Moore v. State,* 527 S.W.2d 529 (Tex.Cr. App.1975); *Bingham v. State,* 523 S.W.2d 948 (Tex.Cr.App.1975); *Ex parte Bowman,* 523 S.W.2d 677 (Tex.Cr.App.1975); *Payton v. State,* 506 S.W.2d 912 (Tex.Cr.App.1974); *Miller v. State,* 472 S.W.2d 269 (Tex.Cr. App.1971).[1] See also, *Palm v. State,* 656 S.W.2d 429 (Tex.Cr.App.1981).

In *Chaffin v. Stynchcombe,* supra, the Supreme Court reaffirmed the doctrine of *Pearce* where the punishment on retrial is assessed by the judge, but held that a higher punishment assessed by a jury at a second trial does not "offend the Due Process Clause so long as the jury is not

---

1. Recently, in *McCullough v. State,* 720 S.W.2d 89 (Tex.Cr.App.1984) (Opinion on Rehearing), *cert. granted* 472 U.S. 1007, 105 S.Ct. 2699, 86 L.Ed.2d 716 (1985), we reaffirmed our decision in *Miller,* supra, holding that the presumption of vindictiveness established by *Pearce,* when a greater sentence is imposed following retrial, is applicable where a jury assesses punishment at the first trial, and a judge assesses punishment upon retrial.

informed of the prior sentence and the second sentence is not otherwise shown to be a product of vindictiveness." *Id.,* 412 U.S. at 35, 93 S.Ct. at 1987. Both before and after *Chaffin* this Court has reached the same result. *Weeks v. State,* 521 S.W.2d 858 (Tex.Cr.App.1975); *Fairris v. State,* 515 S.W.2d 921 (Tex.Cr.App.1974); *Atkins v. State,* 515 S.W.2d 904 (Tex.Cr.App.1974); *Curlin v. State,* 505 S.W.2d 889 (Tex.Cr.App.1974); *Fuery v. State,* 464 S.W.2d 666 (Tex.Cr.App.1971); *Casias v. State,* 452 S.W.2d 483 (Tex.Cr.App.1970); *Gibson v. State,* 448 S.W.2d 481 (Tex.Cr.App.1970); *Branch v. State,* 445 S.W.2d 756 (Tex.Cr. App.1969).

■ Applying these constitutional principles to the case at bar, certain important considerations arise applicable to the punishment phase of appellant's trial. Under the presumption of vindictiveness established in *Pearce,* supra, if appellant elected to have the trial judge assess punishment on retrial, the maximum he could receive would be fifteen years confinement absent "objective information concerning identifiable conduct on the part of the [appellant] occurring after the time of the original sentencing proceeding." Under the rationale of *Chaffin,* supra, if appellant elected to have the jury assess punishment on retrial, upon proof of a prior felony conviction, the absolute minimum punishment he could receive would be fifteen years confinement under V.T.C.A. Penal Code, § 12.42(c), yet he would be exposing himself to possible confinement for life, or a term of not more than 99 years. Thus, absent identifiable conduct by appellant occurring after his original sentence, the minimum punishment which the jury could have imposed was the maximum punishment the trial court could have imposed. Appellant asserts that his trial counsel rendered ineffective assistance because he failed to sufficiently advise him of the consequences of electing to have the jury assess punishment. We agree.

At the evidentiary hearing held pursuant to the order of the court of appeals, appellant testified that, after he had been granted a new trial, he had heard from another inmate "that one of them [the judge or jury] would have to, if they was [sic] to find me guilty again, that one of them couldn't give me more time than that I had ... I forgot which one it was, and that's what made me ask my attorney." Appellant testified that he asked his attorney about this subject on more than one occasion, both before and during trial. Appellant testified that his attorney responded that he didn't know which one could give increased punishment, but that he would check on it. According to appellant, his attorney advised him to elect the jury for punishment because the trial judge was new and was trying to make a name for himself. Appellant testified that he elected the jury for punishment because his attorney advised him to go to the jury because the judge was new.

Appellant's trial counsel testified at the evidentiary hearing. He denied having discussions with appellant regarding whether the judge or the jury would be bound by the prior punishment. Appellant's counsel testified that the decision to have the jury assess punishment came about as follows:

"Q. Okay. How did the conversation come about; do you remember?

"A. Before we started the trial we had to make an election as required, and we discussed it back and forth as to what would be the best way to go. And at that time the decision was made to go to the jury.

"Q. Did you advise Mr. Jackson to go to the jury specifically?

"A. Specifically, no. I remember discussing it with him. If I recall, it was during the time of the Judge's election campaign, and I believe we discussed the fact that the Judge would be harsher on him, perhaps, than the jury would, and because of headlines, and what have you, that would arise out of the trial. And the decision was made to go to the jury.

. . . . .

"Q. Okay. Did you at any time—do you remember telling Mr. Jackson that you didn't know which it would

be better to go to for sentencing? In other words, did you feel confident with your suggestion to go to the jury?

"A. Yes.

"Q. Why did you recommend going to the jury?

"A. I just explained it.

"Q. For the election reasons?

"A. Yes.

. . . . .

"Q. *Can you think of any other reason why you would have advised him to go to the jury?*

"A. *No.*

"Q. Did Mr. Jackson ever mention to you that he had heard that Judge Barrera had a reputation for handing out heavy sentencing because he was trying to make a name for himself?

"A. It was discussed at that time." (Emphasis added.)

The judge presiding at appellant's second trial also testified at the evidentiary hearing. He testified that since appellant elected the jury to assess punishment, he never received a presentence investigation report and that, although he knew appellant had a prior criminal record, he did not know the extent of the record, nor did he recall being made aware of any arrests of appellant between the two trials. The trial judge recalled a discussion occurring before the bench by appellant, his attorney, and the prosecutor regarding appellant's election at the time of trial, and it was his "impression that *for whatever reason,* [appellant] did not want the Court to assess punishment in this case but the jury." (Emphasis added.)

 The standard of "reasonably effective assistance of counsel" is used to test the adequacy of representation afforded an accused by retained as well as appointed counsel when the performance is to be judged by the Sixth Amendment right to assistance of counsel made applicable to the states by the Fourteenth Amendment and by the "right to be heard" provision of Article I, Section 10, Bill of Rights, Constitution of Texas. *Ex parte Duffy,* 607 S.W. 2d 507 (Tex.Cr.App.1980). Fully stated, the standard for effective counsel is "counsel reasonably likely to render and rendering reasonably effective assistance." *Id.* at n. 14, quoting *MacKenna v. Ellis,* 280 F.2d 592 (5th Cir.1960). In applying this standard, the adequacy of counsel's service on behalf of an accused must be gauged by the totality of the representation. *Ex parte Raborn,* 658 S.W.2d 602 (Tex.Cr. App.1983); *Archie v. State,* 615 S.W.2d 762 (Tex.Cr.App.1981). Thus, the constitutional right to counsel does not mean errorless counsel. *Ex parte Robinson,* 639 S.W.2d 953 (Tex.Cr.App.1982); *Mercado v. State,* 615 S.W.2d 225 (Tex.Cr.App.1981).

In the case at bar the court of appeals concluded, from the facts that were adduced in the trial court, that appellant's counsel's failure to correctly advise appellant of the consequences of electing the jury instead of the judge to assess punishment caused the appellant to be denied effective assistance of counsel as a matter of law.

 As this case demonstrates, whether counsel has rendered reasonably effective assistance of counsel is a mixed question of law and fact. See *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674, 700 (1984). Of necessity, a claim of ineffective assistance of counsel must be determined upon the particular circumstances of each individual case. *Ex parte Raborn,* supra; *Benoit v. State,* 561 S.W.2d 810 (Tex.Cr.App.1977). While we hesitate to designate any error as per se ineffective assistance of counsel as a matter of law (and we therefore retreat from any such inference in the language employed by the court of appeals), we hold that the record supports the result the court of appeals reached; that the single error of omission by appellant's counsel constituted ineffective assistance.

 We have recognized the very practical consideration that the criminal defense lawyer controls the progress of a case while the client confronts only three personal decisions: his plea to the charge, *whether to be tried by a jury,* and whether to testify on his own behalf. See *Burnett*

*v. State,* 642 S.W.2d 765, n. 8 (Tex.Cr.App. 1982). Clearly, the Art. 37.07, § 2(b)(2) election is a choice belonging to the defendant, encompassed within the personal decision of whether to be tried by a jury.[2]

In *Ex parte Dunham,* 650 S.W.2d 825 (Tex.Cr.App.1983), we considered a claim of ineffective assistance of counsel based upon an attorney's advice persuading an accused to waive his right to jury trial in order to avoid preparing for voir dire. Among the factors considered in assessing this claim were: (1) whether advice was given which would promote an understanding of the law in relation to the facts, (2) whether the advice was reasonably competent, and (3) whether the advice permits an informed and conscious choice. In *Dunham,* supra, we sustained the contentions of ineffective assistance noting:

> "... Applicant's counsel convinced applicant to waive his right to a jury trial, even though such a waiver would not be advantageous to the applicant in any way, and would probably be sure to be disadvantageous. It is clear that applicant was not given competent advice and thus applicant was prevented from making an informed and conscious choice regarding his right to a jury trial."

■ We believe this analysis should also apply to the very valuable statutory right of election under Art. 37.07, § 2(b)(2), V.A. C.C.P. For the Texas statutory right of election to be meaningful, it must be an informed decision, intelligently made, with full knowledge of the circumstances, options, and consequences. The impact of *Pearce,* supra, is certainly relevant to an informed and conscious choice regarding appellant's right of election on retrial.

■ A criminal defense lawyer must have a firm command of the facts of the case *as well as governing law* before he can render reasonably effective assistance to his client. *Ex parte Lilly,* 656 S.W.2d 490 (Tex.Cr.App.1983); *Ex parte Ybarra,* 629 S.W.2d 943 (Tex.Cr.App.1982); *Ex parte Duffy,* supra. The responsibility of having a firm command of the facts of the case as well as governing law in order to assist and advise one criminally accused is not one placed on the State. See *Wooldridge v. State,* 653 S.W.2d 811, n. 7 (Tex. Cr.App.1983). See also *Ex parte Duffy,* supra. We must, therefore, charge appellant's attorney with knowledge of the constitutional principles applicable to punishment on retrial and the duty to advise appellant of the impact and consequences of electing to have the jury assess punishment in this case.

Appellant's attorney did advise him about the punishment attitudes and reputation of the trial judge in this case, a very important factor to consider in the election decision. The record clearly shows, however, that appellant's attorney failed to advise him regarding the prophylactic protections of *Pearce* applicable to the trial judge and the contrasting wide open punishment discretion vested in the jury.[3] Thus, the

---

2. Article 37.07, § 2(b), V.A.C.C.P., provides in pertinent part:

"(b) Except as provided in Article 37.071 [Procedure in Capital Case], if a finding of guilty is returned, it shall then be the responsibility of the judge to assess the punishment applicable to the offense; provided however, that ... (2) in ... cases where *the defendant so elects* in writing at the time he enters his plea in open court, the punishment shall be assessed by the same jury." (Emphasis added.)

3. The dissent complains about the non-final decision of this Court in *Castleberry v. State,* 704 S.W.2d 21 (Tex.Cr.App., No. 166–83, delivered July 18, 1984), and its relationship to the *Pearce* holding. The unique facts and limited holding of *Castleberry* do not control the instant case. In *Castleberry,* the defendant wrote a letter to the trial judge six days after his conviction complaining he had gotten a "bad deal." In the instant case, appellate briefs had been filed before the trial court granted a new trial. Certainly, under our former *appellate procedure,* if the trial court granted a new trial after the filing of appellate briefs, *Pearce* has application. See Art. 40.09, § 12, V.A.C.C.P. (1965) (The record on appeal—trial court's duty). In any event, *Castleberry* is pending rehearing and as such is not yet authoratative.

The court of appeals in this case held that counsel's error demonstrated an "obvious lack of knowledge of the applicable legal principles governing punishment on retrial." Nothing in this record rebuts that conclusion. The dissent's suggestion that counsel may have *interpreted Pearce* as applicable only to reversals upon appeal by a higher court is surprising in

advice did not promote an understanding of the law in relation to the facts and the advice did not permit an informed and conscious choice.[4] As a result, appellant made a decision which resulted in a sentence ten years greater than he would have received had he gone to the court for punishment. Considering the court of appeals' finding that there was no objective information concerning identifiable conduct of the accused between the two trials and that, therefore, the trial judge was locked into giving the minimum sentence of 15 years, there is more than a reasonable probability that, but for counsel's advice, the result of the proceedings would have been different (i.e. the sentence would have been 10 years less). *Strickland,* supra at 694, 104 S.Ct. at 2068.[5]

We have held that an accused may be denied effective assistance of counsel be-

cause of errors occurring solely in the punishment phase of trial. See *Ex parte Scott,* 581 S.W.2d 181 (Tex.Cr.App.1979) (failure to investigate the circumstances underlying convictions used for enhancement). See also, *Vela v. Estelle,* 708 F.2d 954 (5th Cir.1983), *cert. denied,* 464 U.S. 1053, 104 S.Ct. 736, 79 L.Ed.2d 195 (1984). We have also recognized that, as a practical matter, some isolated omissions may so affect the outcome of a particular case as to undermine the reliability of the proceedings. See *May v. State,* 722 S.W.2d 699 (Tex.Cr.App.1984) (failure to have defendant's application for probation sworn). See also, *Nero v. Blackburn,* 597 F.2d 991, 994 (5th Cir.1979) ("Sometimes a single error is so substantial that it alone causes the attorney's assistance to fall below the sixth amendment standard."). In this case, we must agree with the court of appeals that the failure of appellant's attorney to suffi-

---

light of the dissenter's strong belief in staying within the record.

4. The State asserts, and the dissent as much as argues, that inasmuch as the record reflects appellant had been *arrested* for theft subsequent to his first sentencing proceeding, the trial judge was not bound by *Pearce* and electing the jury was the result of trial strategy. We need not consider today the State's contention that an arrest is "identifiable conduct" within the meaning of *Pearce,* nor do we consider whether an arrest is an "event" within the meaning of *Wasman v. United States,* 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984), sufficient to overcome the presumption of vindictiveness and justify an increased sentence. The relevant inquiry here is whether appellant's attorney counseled him on these matters and gave him advice which was the product of trial strategy. The record, including the State's complete cross examination of appellant, his attorney, and the trial judge at the evidentiary hearing ordered by the court of appeals, clearly indicates that nothing except "the [judge's] election reasons" were considered in electing the jury in this case. See also footnote 5.

5. The dissent surprisingly ignores the record of the hearing ordered by the court of appeals in a paragraph beginning: "Turning to the objective information about identifiable conduct on the part of the appellant after the time of the original sentencing, ...". The hearing, ordered specifically to develop such evidence if it existed, revealed none. After review of the evidentiary hearing, ordered to establish whether appellant engaged in intervening identifiable conduct, the court of appeals held there was *no* identifiable

conduct by appellant which would have allowed increased punishment by the trial court. That this holding is correct cannot seriously be disputed. The dissent would point to "evidence" in the record that appellant failed to appear for a trial setting and was surrendered by the sureties on his bond. We decline to elevate same to the status of "evidence" because same were never developed as a factual matter at appellant's trial *or at the evidentiary hearing ordered by the court of appeals.* Nor has this "evidence" been alleged or briefed as identifiable conduct before the court of appeals, or before this Court on the *State's* petition for discretionary review, either by the locally affected district attorney or the State's prosecuting attorney. As is obvious from the record, the parties to this protracted litigation do not rely upon this "evidence' as identifiable conduct. Likewise, the evidentiary value of appellant's *arrest,* as it bears upon the issue of identifiable *conduct,* is nil. This is especially true since appellant denies committing the offense, has never been prosecuted for the crime, and *no testimony was offered at the evidentiary hearing* to even indicate appellant did commit the offense. Additionally, absolutely no legitimate inference can be drawn from the prosecutor's unanswered inquiry about five arrests "for such things as aggravated assault, felony theft...," because nothing in the record even supports the question. In short, any argument that appellant engaged in conduct sufficient to remove the presumption of *Pearce,* or was concerned that evidence of identifiable conduct might be introduced by the State at the punishment phase, is speculative, unfounded and outside the record.

ciently advise him as to the consequences of electing to have the jury assess punishment permeated the entire proceeding and rendered counsel's assistance ineffective.[6]

As the court of appeals held, since the jury assessed punishment, upon reversal the proper remedy is to remand for a new trial. *Bullard v. State*, 548 S.W.2d 13 (Tex.Cr.App.1977), *rev'd on other grounds*, 665 F.2d 1347 (5th Cir.1982), *vacated*, 459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed.2d 987 (1983).[7]

The judgment of the court of appeals is affirmed.

WHITE, J., not participating.

ONION, Presiding Judge, dissenting.

Appellant was convicted of the actual delivery of heroin, a controlled substance, a first-degree felony. See Article 4476–15, § 4.03(b), V.A.C.S. One prior felony conviction was alleged and proved for the enhancement of punishment. The jury assessed punishment at 25 years' confine-

---

**6.** The dissent concludes with an accusation that today we set the stage for a multitude of claims of ineffective assistance of counsel based on one error. The stage for reversal due to a single error of counsel, so severe in its consequenses that it permeates the entirety of his representation, has long been set. "Sometimes a single error is so substantial that it *alone* causes the attorney's assistance to fall below the Sixth Amendment standard." *Nero v. Blackburn*, 597 F.2d 991, 994 (5th Cir.1979) (emphasis supplied). Last year, in *May v. State*, 722 S.W.2d 699 (Tex.Cr.App.1984), *this Court* considered "whether counsel's failure to have [the defendant's] motion for probation sworn to constituted ineffective assistance of counsel." Without discussing counsel's overall representation at trial, we noted that this error was "not the result of trial strategy" and held counsel had not rendered effective assistance of counsel. Thus, in *May*, a single error of omission occurring at the punishment phase of trial, for which there was no trial strategy, and which *might* have caused the result of the proceedings to be different (i.e., the jury *might* have granted probation) and therefore *materially harmed* the accused's, constituted ineffective assistance of counsel. In the case at bar, a single error of omission occurring at the punishment phase of trial, for which there was no trial strategy, and which *did unquestionably* cause the result of the proceedings to be different (i.e., an almost two-fold increase in punishment) materially harmed the appellant, and constituted ineffective assistance of counsel.

Fortunately, history shows that single errors of such magnitude are rare. However, to ignore such a single error simply because it is single, while granting relief where multiple errors cumulatively reach the same magnitude, seems contrary to the very reasons that caused the creation of the doctrine of effective assistance of counsel.

As for the dissent's reliance on *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), it is cogent to note that in outlining practical considerations for the application of its two-pronged test for ineffective assistance of counsel, the Supreme Court stated

that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." The prejudice standard, as constructed by the Supreme Court, requires that:

"The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 104 S.Ct. at 2068.

Can it be said that appellant has failed to demonstrate prejudice? Is not counsel's error the "but for" cause of appellant's increased punishment? Are we confident in the outcome of the proceedings?

The sockdolager is simply this:

"[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." 104 S.Ct. at 2069.

**7.** In a supplemental brief to the State's petition, the State's attorney argues that since the election decision belongs solely to the appellant, he could simply elect to have the jury assess punishment in the event of further retrial, and if assessed punishment in excess of fifteen years, could again allege ineffective assistance of counsel and obtain still another reversal. We disagree. While it is true that the Art. 37.07, § 2(b)(2) election decision belongs solely to the accused, the relevant inquiry is whether he makes an informed and intelligent choice with knowledge of the relevant factors. As noted above, we reject the notion of "automatic" ineffective assistance of counsel. In this vein we note, however, that a careful counsel or trial judge should ensure that the record reflects an accused's awareness of the exposure to greater punishment on retrial if the jury is elected.

**512**

ment in the Texas Department of Corrections. V.T.C.A., Penal Code, § 12.42.

On appeal in three grounds of error appellant urged, through his appointed appellate counsel, the ineffective assistance of his trial counsel. In his fourth ground of error appellant attacked the sufficiency of the evidence to sustain the conviction.

The San Antonio Court rejected the sufficiency issue but abated the appeal for an evidentiary hearing concerning his first ground of error relating to the ineffective assistance of counsel. The other two grounds of error were not reached. *Jackson v. State*, 640 S.W.2d 323 (Tex.App.— San Antonio 1982, pet. ref'd.).

His first ground of error urged ineffective assistance of counsel because appellant was not advised sufficiently as to the consequences of electing to have the jury assess punishment in the event of a conviction. He alleged the appeal was from his conviction at a second trial for the same offense; that at his first trial the court had assessed his punishment at 15 years' imprisonment as a repeat offender; that subsequently the trial court had granted him a new trial pursuant to former Article 40.09, § 12, then in existence; that in light of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and *Miller v. State*, 472 S.W.2d 269 (Tex.Cr.App. 1971), the trial court could not assess more than 15 years' imprisonment, the minimum punishment for a first-degree felony, enhanced by one prior felony conviction and there was no reason to elect the jury to assess punishment at the second trial. Yet appellant contends his appointed counsel at the second trial had not sufficiently advised him and he chose the jury who assessed punishment at twenty-five years' imprisonment to his detriment.

After discussing *Pearce*, the Court of Appeals wrote:

"Therefore, a hearing should be conducted in the trial court to establish whether objective information could have been made available to the trial court which might have resulted in the imposition of a more severe punishment than the fifteen years assessed at the first trial and thereby determine whether there was a reasonable basis for trial counsel's action. As a result, this appeal is abated and a hearing ordered in the trial court for this purpose."

At the time of the remand the record was meager as to evidence of a previous trial. The docket sheet reflects no earlier trial. No judgment, sentence or order granting new trial, etc., are in the record. There was a reference to a statement of facts from a previous trial, but it was not introduced.

The hearing on the motion for new trial in the instant case does reflect that appellant was originally indicted in Cause No. 77–CR–1066 for delivery of heroin with a "repeater" allegation in the 144th District Court; that on March 16, 1978, appellant entered a plea of not guilty before the court; that on March 24, 1978, 15 years was assessed as punishment by the trial judge; that subsequently a motion for new trial was overruled; that a hearing on motion for new trial filed by "appellate" counsel was conducted; that on December 3, 1979, a new trial was granted by the trial judge, apparently under Article 40.09, supra, then in existence. There was some indication in the testimony the word "actually" had been left out of the indictment for delivery of heroin resulting in the trial judge's action in granting the new trial. The clerk of the court testified Cause No. 77–CR–1066 was "reinstated" under Cause No. 77–CR–3150 and subsequently "reinstated" in Cause No. 80–CR–0934 under which indictment the instant trial had been conducted.

At the time of remand there was evidence in the record that after the indictment in 80–CR–0934 the appellant failed to appear for a trial setting and a bond forfeiture was ordered and a capias issued for his arrest on September 29, 1980. He was surrendered on October 21, 1980, by the sureties on his bond. See V.T.C.A., Penal Code, § 38.11 (Bail Jumping and Failure to Appear). At trial one police officer-witness referred to a pending theft charge against the appellant. This was the only evidence of possible identifiable conduct on the part

of the appellant after the first sentence was imposed.

On August 26, 1983, at the evidentiary hearing ordered by the Court of Appeals, the appellant, who was already on parole on his 25 year sentence, testified that prior to the second trial he had heard from another inmate or prisoner that either the judge or jury would have to give him the same amount of time as at the first trial, but he could not remember which one it was, that he asked his counsel about it. The attorney promised to check on it as he didn't know and asked appellant to do the same thing. Appellant testified he mentioned this matter to his counsel several times and received no answer. He did relate that his counsel told him that the judge was trying to make a name for himself, and he had heard in jail the judge "was kind of rough" so he "picked the jury" after counsel advised him to do so.

Appellant testified the judge at his first trial was Judge Hippo Garcia and that the second trial judge was Judge Roy Barrera, and that it was Barrera that he heard the talk about in jail.

Appellant's second trial counsel testified at the evidentiary hearing. The record reflects:

"Q. But did he (appellant) actually inform you that someone had told him that he should choose one or the other and he asked you which one it was?

"A. No. The conversation didn't come about that way."

Counsel stated they discussed an election before the trial started and a decision was made to go to the jury, that "it was during the time of the Judge's election campaign" and the fact was discussed the judge would be harsher than the jury. He explained his recommendation was based on "election reasons." He acknowledged they had discussed the fact Judge Barrera "had a reputation for handing out heavy sentencing because he was trying to make a name for himself." Counsel stated he left the decision to the appellant though he had suggested the jury. His interrogation ended with:

"Q. Can you think of any other reasons why you would have advised him to go to the jury?

"A. No."

Judge Roy Barrera, Jr., testified he was the trial judge at appellant's second trial on January 13, 1981, that he had been judge of the 144th District Court since October 22, 1980. He stated the trial was about three months after his appointment and "I hardly doubt that I was in the middle of an election year campaign." Judge Barrera recalled a discussion in front of the bench about the election of judge or jury, and it was his recollection the appellant wanted the jury to assess punishment.

The evidentiary hearing did not develop very well the evidence as to objective information about identifiable conduct by the appellant between the time of the first sentencing and the second.

At the evidentiary hearing appellant admitted he had been arrested for theft during the time period in question, denied his guilt, and stated after his 25 year conviction the theft charges had been dismissed. When Judge Barrera testified he was asked by the prosecutor whether he had not received presentence report information that during the time period in question appellant had been arrested five times "for such things as aggravated assault, felony theft ... ," the judge pointed out that it was a jury trial and he had not requested a presentence report.

The State did not further attempt to develop this line of testimony though that apparently had been the principal objective of the Court of Appeals. Further, appellant's trial counsel was never interrogated as to whether he was aware of the *Pearce* decision or had researched that area of the law. The indictment, judgment, sentence, order granting new trial or other papers from the first trial were never introduced into evidence.[1]

Following the evidentiary hearing, the Court of Appeals agreed with appellant's

---

1. It appears the State had ineffective assistance of counsel at the evidentiary hearing.

first ground of error and noted that the trial judge could not have imposed a more severe penalty on the appellant at the second trial absent objective information concerning identifiable conduct on the part of the appellant after the time of the first sentence, and that appellant's counsel did not advise him as to this matter. The Court of Appeals then held that appellant was, as a matter of law, denied the effective assistance of counsel.

Recognizing the standards applied in the past to claims of ineffective assistance of counsel, the court nevertheless wrote:

"It is true that in the case before us we have singled out one error of counsel upon which we base this holding. In our opinion, however, this single error of counsel permeates the entire proceeding below and demonstrates an obvious lack of knowledge of the applicable legal principles governing punishment on retrial by appellant's attorney." *Jackson v. State,* 662 S.W.2d 74 (Tex.App.—San Antonio 1983).

The Court of Appeals reversed the conviction without reaching appellant's ground of error 2 and 3 also claiming ineffective assistance of counsel even though acknowledging effectiveness of counsel is to be judged by the totality of representation.

The majority of this Court now affirms the judgment of the Court of Appeals stating:

"While we hesitate to designate any error as per se ineffective assistance of counsel as a matter of law (and we therefore retreat from any such inference in the language employed by the court of appeals), we hold that the record supports the result the court of appeals reached; that the single error of omission by appellant's counsel constituted ineffective assistance...."

We have now abandoned or seriously undermined our standards for passing on questions of ineffective assistance of counsel. A single error on counsel's part as viewed by an appellate court may necessitate a reversal of a case without considering the totality of the representation, other claims of ineffective assistance, provided the one envisioned error is big enough, bad enough in the eyes of appellate judges.

Appellant's counsel is faulted for allowing appellant to opt for the jury to assess punishment rather than the trial judge which resulted in a 25 year sentence rather than the 15 years the trial judge would have been limited to in light of *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and its progeny. It surely cannot be argued that without the applicability of *Pearce* counsel's action would not call for reversal.

*Pearce* involved the reversal of a conviction by a higher court on appeal. It first should be observed that in the instant case there was no reversal of the conviction by an appellate court. The first trial judge granted a new trial before he was succeeded on the bench by another judge some 10 months later.

If counsel is faulted for not seeing the applicability of *Pearce* to the case, it should be noted that as late as July 18, 1984, a majority of this Court (7–2)[2] in *Castleberry v. State,* 704 S.W.2d 21 (Tex.Cr.App.1984), wrote:

"We conclude the rationale of *Pearce* does not and cannot apply to the instant case simply because appellant never exercised his statutory or constitutional right to review by a higher court. Therefore, what happened to him in terms of increased punishment cannot *under any interpretation* be attributed to any unconstitutional response to exercise of those rights—a response condemned in *Pearce.*" (Emphasis supplied.)

*Castleberry* is now pending rehearing.[3] Regardless of what action is taken on re-

---

2. This writer and Judge Teague dissented.

3. In the past this Court has applied *Pearce* where a new trial was granted by the trial court without an appeal. See, e.g., *Payton v. State,* 506 S.W.2d 912 (Tex.Cr.App.1974); *Ex parte Bowman,* 523 S.W.2d 677 (Tex.Cr.App.1975);

*Moore v. State,* 527 S.W.2d 529 (Tex.Cr.App. 1975); *Lechuga v. State,* 532 S.W.2d 581 (Tex.Cr. App.1975); *Palm v. State,* 656 S.W.2d 429 (Tex. Cr.App.1981). The rationale of extending *Pearce* in these cases was not discussed, however, it (rationale) was discussed in *McCullough*

hearing, can counsel be faulted if he interpreted *Pearce* as applicable only to reversals upon appeal by a higher court? If he is faulted, then he is in good company.

Further, the new trial was granted by the first trial judge apparently because of a fundamental defect in the indictment.

Over 10 months later a new judge assumed the bench of the trial court, and the second trial commenced 13 months later upon a new indictment. Is it likely that the second trial judge would consider himself to have a "personal stake" in the prior conviction or a "motivation to engage in self-vindication"? See and cf. *Chaffin v. Stynchcombe*, 412 U.S. 17, 27, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); *Wasman v. United States*, 468 U.S. 559, 104 S.Ct. 3217, 3222, 82 L.Ed.2d 424 (1984). While appellant did not expressly concede the second trial judge was not vindictive because the prior conviction had been set aside, see *Moon v. Maryland*, 398 U.S. 319, 90 S.Ct. 1730, 26 L.Ed.2d 262 (1970), he made no claim that Judge Barrera was vindictive on this basis. It is true that in *Bingham v. State*, 523 S.W.2d 948 (Tex.Cr.App.1975), the rule of *Pearce* was applied where there were two different judges. The conviction was obtained in a trial before a "visiting" judge. On appeal the cause was remanded by this Court, not for a new trial, but reassessment of punishment because of the improper admission of certain evidence. Upon remand, the "regular" judge of the court increased the punishment although aware of the earlier sentence and without evidence of identifiable conduct on the part of the defendant after time of original sentence. No other rationale was offered.

It has been said the major purpose of the *Pearce* doctrine is to prevent an increased penalty on retrial from being the product of retaliation or vindictiveness on the part of the sentencing judge who was offended by the accused's successful efforts in securing a new trial. *Casias v. Beto*, 333 F.Supp. 214 (N.D.Tex.1971), aff'd. 459 F.2d 54 (5th Cir.1972), cert. den. 410 U.S. 970, 93 S.Ct. 1450, 35 L.Ed.2d 706 (1973). Can it be said Judge Barrera was offended by the granting of a new trial by Judge Garcia?

The *Pearce* rule, of course, has been read to apply a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence. *United States v. Goodwin*, 457 U.S. 368, 374, 102 S.Ct. 2485, 2489, 73 L.Ed.2d 74 (1982). See *Wasman v. United States*, supra, 104 S.Ct. at p. 3221. In *Wasman*, a plurality opinion, Chief Justice Burger wrote:

"If it was not clear from the Court's holding in *Pearce*, it is clear from our subsequent cases applying *Pearce* that due process does not in any sense forbid enhanced sentences or charges, but only enhancement motivated by *actual vindictiveness* toward the defendant for having exercised guaranteed rights. In *Pearce* and in *Blackledge*,[4] the Court 'presumed' that the increased sentence and charge were products of actual vindictiveness aroused by the defendants' appeals. It held that the defendants' right to due process was violated not because the sentence and charge were enhanced, but because there was no evidence introduced to rebut the presumption that actual vindictiveness was behind the increases; in other words, by operation of law, the increases were deemed motivated by vindictiveness. In *Colten*,[5] *Chaffin*,[6] *Bordenkircher*,[7] and

---

*v. State*, 680 S.W.2d 493, 497 (Tex.App.—Amarillo 1983), by Justice Countiss for the court in the opinion on rehearing which cause was reversed on other grounds. *McCullough v. State*, 720 S.W.2d 89 (Tex.Cr.App.1983), cert. granted, 472 U.S. 1007, 105 S.Ct. 2699, 86 L.Ed.2d 716 (1985). *Castleberry*, on original submission, overruled these cases sub silentio.

4. *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

5. *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972).

6. *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973).

7. *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

*Goodwin,*[8] on the other hand—where the presumption was held not to apply—we made clear that a due process violation could be established only by proof of actual vindictiveness.

"In sum, where the presumption applies, the sentencing authority or the prosecutor must rebut the presumption that an increased sentence or charge resulted from vindictiveness; where the presumption does not apply, the defendant must affirmatively prove actual vindictiveness."

Five justices concurred in the result of *Wasman* that a sentence may be increased on retrial based on an intervening *event* as well as intervening conduct, but in substance stated the *Pearce* presumption is not simply concerned with actual vindictiveness, but is also intended to protect against reasonable apprehension of vindictiveness that could deter a defendant from seeking a new trial. Thus the Supreme Court justices too are not in agreement as to the proper application of *Pearce.* Needless to say, "*Pearce* is not without its ambiguities; ..." *Wasman,* supra, at 104 S.Ct. at p. 3224. It would not be surprising if counsel had difficulty in determining if *Pearce* had application to the circumstances in the instant case.

Turning to the objective information about identifiable conduct on the part of appellant after the time of the original sentencing, it is first noted there was a failure to appear and an ordered bond forfeiture. Appellant was later surrendered by the sureties on his bond, all within the prescribed time period. Such conduct may well have constituted a violation of V.T. C.A., Penal Code, § 38.11 (Bail Jumping and Failure to Appear). Surely appellant and his counsel were aware of this conduct. At the evidentiary hearing appellant admitted he had been arrested for theft after the first trial, but claimed his innocence and

dismissal of the pending charges after the imposition of the 25 year sentence at his second trial. Appellant and his counsel were obviously aware of these pending charges at the time of the second trial. There was reference in a question at the evidentiary hearing to appellant's five arrests after the first trial. These facts, of course, were not developed. Besides other problems with *Pearce,* counsel may well have concluded that if the judge had chosen to assess punishment, and there had been an insistence on his part that the judge was limited to 15 years under the *Pearce* rule, the State could have proved "identifiable conduct" after the first trial. In that situation the judge may have assessed a harsher punishment than the jury actually did. Can it really be said that counsel's action was without the wide range of reasonable professional assistance?[9]

The majority views counsel's action in the case as error, and a single error that, standing alone, deprived the appellant of the effective assistance of counsel. While the majority "retreats" from the "matter of law" approach of the Court of Appeals, it nevertheless seems to depart from the adopted standard for effective counsel—"counsel reasonably likely to render and rendering reasonably effective assistance." *Ex parte Duffy,* 607 S.W.2d 507 (Tex.Cr. App.1980). Cf. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2070, 80 L.Ed. 2d 674 (1984). The majority acknowledges that each claim of ineffective assistance of counsel must be determined upon the particular circumstances of each case. *Benoit v. State,* 561 S.W.2d 810 (Tex.Cr.App.1977); *Ex parte Raborn,* 658 S.W.2d 602 (Tex.Cr. App.1983). And we know that the constitutional right to counsel does not mean error-less counsel, and ineffectiveness is not to be determined by hindsighted comparison with how other counsel might have tried the case. *Benoit v. State,* supra; *Boles v.*

---

8. *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).

9. Upon the retrial now authorized by the majority the appellant will be guaranteed no greater punishment than 15 years if convicted. The State will be authorized to demonstrate objec-

tive information about identifiable conduct or event since the trial of the original sentence. If this is done the trial judge will not be limited to 15 years, and of course, if a jury is chosen again the jury may impose a penalty with the entire range of punishment.

*State,* 598 S.W.2d 274, 279 (Tex.Cr.App. 1980); *Hawkins v. State,* 660 S.W.2d 65 (Tex.Cr.App.1983). And most importantly, the adequacy of counsel's service on behalf of an accused must be gauged by the totality of representation, rather than isolated acts or omissions. *Boles v. State,* supra; *Benoit v. State,* supra; *Ex parte Raborn,* supra; *Archie v. State,* 615 S.W.2d 762 (Tex.Cr.App.1981).

What was said in *Strickland v. Washington,* supra, 104 S.Ct. at p. 2065–66, is here instructive.

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and *it is all easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.* Cf. *Engle v. Isaac,* 456 U.S. 107, 133–134, 102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, *a court must indulge a strong presumption that counsel's counsel falls within the wide range of reasonable professional assistance*; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' See *Michel v. Louisiana,* supra, 350 U.S. [91] at 101, 76 S.Ct. [158] at 164 [100 L.Ed. 83 (1955) ]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 343 (1983)."

Since totality of representation is the proper basis for inquiry, *Boles v. State,* supra, I cannot agree, given the circum-

stances of this case, that the error, if any, was such, standing alone, as to call for reversal on the basis of ineffective assistance of counsel. The Court of Appeals never considered grounds of errors 2 and 3 also dealing with claims of ineffective assistance of counsel. I would remand to that court to consider those grounds and reconsider this ground of error under the totality of representation test.

I dissent most vigorously to the majority prying open Pandora's box and setting the stage for the multitude of claims of ineffective counsel based on one error.

W.C. DAVIS, J., joins this dissent.

McCORMICK, Judge, dissenting.

I join wholeheartedly the opinion of the Presiding Judge wherein he dissents from the opinion of the majority. To hold from the meager record before us that there was no tactical reason for the attorney to advise the appellant to select the jury for punishment ignores the reality of what is present. Obviously, from the references in the record to an intervening arrest, there was quite probably a reason to select the jury rather than the judge who, with the benefit of a pre-sentence investigation, could very well have lived up to the reputation the parties have attempted to give him.

We are not here concerned with whether *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) has application. The *judge* did not impose a longer prison sentence than the appellant originally received. The jury did. Thus we need not address any issue of vindictiveness but need only consider the effective assistance of counsel issue. In light of the picture that has been painted, it is quite probable that appellant received *most* effective assistance of counsel if in fact there were intervening factors which could have been brought to the attention of a judge which would not otherwise be admissible pursuant to Article 37.07 V.A.C.C.P.

Further, since the majority has now concluded that the most this appellant could receive is fifteen years, and since the minimum is fifteen years, why do they not opt

to merely reform the judgment to reflect, as they determined, the only punishment available?

What concerns me more, however, is whether, upon retrial, counsel will be determined to be ineffective if he advises appellant to choose the judge to assess punishment knowing that a reversal of any conviction will be automatic if he chooses a jury and that jury assess any punishment greater than fifteen years. To allow the manipulation of our system as has been done by this appellant is to ignore our duties as judges both to the law and to the administration of justice.

For these additional reasons, I dissent.