# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00089-CR

**Scott Lee Orson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 55,019, HONORABLE JOE CARROLL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Scott Lee Orson appeals his conviction for the offense of forgery, for which he was sentenced to eight months in state jail. Tex. Pen. Code Ann. § 32.21(d) (West Supp. 2004-05). On appeal, Orson contends that his trial attorney's failure to investigate the facts and circumstances giving rise to the indictment denied him effective assistance of counsel. Specifically, Orson contends that, had his trial counsel investigated the circumstances of the alleged forgery, he would have discovered that if Orson was guilty of any offense, it was theft and not forgery. For the reasons that follow, we affirm the judgment of the trial court.

## BACKGROUND

Scott Orson was indicted for forgery on July 9, 2003. The indictment alleged that Orson forged a check in the amount of $277.30 by altering the check in such a manner that it

purported to be the act of authorized signatories of Netweb Designs, Inc. Orson admits that he fabricated the names of both signatories on the check (James Tidwell and James Strauss) and the company Netweb Designs and otherwise "manipulat[ed]" the check, but he maintains that because he was an authorized user of the credit card account on which the checks were drawn, he had no intent to defraud—a required element of forgery.[1] In addition, he asserts that he had altered several checks in such a manner in the past and that they had all been paid in full. Orson claims that the only reason the check in question did not clear was that his mother, the other authorized signatory on the account, had closed the account without his knowledge before the check was cashed. Orson had not been in contact with his mother for at least nine months prior to the events at issue in this case and had not personally made any payments on the credit card account for that amount of time. He had not received any statement for the account, as they were apparently being sent to his mother.

On October 8, 2003, Orson pleaded guilty to forgery. In the sentencing phase of the hearing, however, Orson made comments raising a question as to whether he believed he was guilty, and the trial judge allowed the plea to be withdrawn. On November 25, 2003, Orson entered another plea of guilty without a plea agreement. During this hearing, Orson testified that he had discussed the charges in the indictment with his counsel, Richard O. Harris; Orson said he understood the charges, understood the punishment range for the charged offense, was mentally competent, voluntarily waived a jury trial, and was freely and voluntarily pleading guilty because he was guilty

---

[1] In fact, however, the account number found on the check in question was not the same number as that on the account on which Orson was an authorized user. According to an affidavit filed by Orson's mother, the account on which Orson was an authorized user ended in the numbers 4415, whereas the account number found on the check in question ended in the numbers 4524.

of the offense as charged in the indictment and for no other reason. Having thus testified, Orson was found guilty, and was sentenced to eight months in state jail.

Orson subsequently retained new counsel, James H. Kreimeyer, and filed a motion for new trial. In his motion, Orson alleged that Harris, his previous trial counsel, had rendered ineffective assistance by not fully investigating the facts and circumstances that led to the charge of forgery.

At the hearing on the motion for new trial, Orson, Orson's mother, and Harris testified. The district court denied the motion. Orson now appeals the conviction and asks that the judgment be set aside and the cause remanded to the trial court for a new trial.

## DISCUSSION

By his sole issue on appeal, Orson contends that he was denied his right to effective assistance of counsel because his trial counsel failed to fully investigate the circumstances that gave rise to the indictment before the November hearing at which Orson pleaded guilty. For a plea of guilty to be accepted by the court, it must be knowingly and voluntarily given by a mentally competent defendant. Tex. Code Crim. Proc. Ann. art. 26.13(b) (West 2003); *see Ex parte Battle*, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991). In determining whether the plea was entered voluntarily and knowingly, the court considers whether counsel rendered effective representation for the defendant during the proceeding. *Toupal v. State*, 926 S.W.2d 606, 607 (Tex. App.—Texarkana 1996, no pet.). In order to prevail on a claim alleging ineffective assistance of counsel in the plea process, a defendant must prove by a preponderance of the evidence that his counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced his

3

defense. *Strickland v. Washington*, 466 U.S. 688, 687 (1984)*; Battle*, 817 S.W.2d at 83.  In showing that his defense was prejudiced, the appellant must demonstrate that, but for counsel's deficient advice, "he would not have pleaded guilty and would have insisted on going to trial."  *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)).  When the alleged error of trial counsel is a failure to investigate or discover potentially exculpatory evidence, whether or not the failure "prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led the attorney to change his recommendation as to the plea," which depends "in large part on a prediction that the evidence likely would have changed the outcome of a trial."  *Castellano v. State*, 49 S.W.3d 566, 576 (Tex. App.—Corpus Christi 2001, pet. ref'd) (citing *Hill,* 474 U.S. at 59).  A strong presumption exists "that counsel's actions fell within the wide range of reasonably professional assistance," *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000), and judicial review of a defendant's ineffective assistance claim must therefore be highly deferential to trial counsel.  *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990).

Orson asserts that his trial counsel was ineffective because of his failure to fully ascertain whether all the elements of a forgery were present before he allowed his client to enter a plea of guilty.  Specifically, Orson states that an issue as to whether he had an "intent to defraud" arose from his testimony at the October hearing and resulted in the withdrawal of his first guilty plea.  Orson claims that this testimony should have alerted Harris that there was exculpatory evidence that needed to be further investigated before he could determine whether Orson should plead guilty to forgery.  Orson asserts that Harris did not perform this additional investigation because, if he had,

he would have discovered that Orson had committed theft, a misdemeanor, not forgery.[2]  As evidence of trial counsel's alleged failure to investigate, Orson points to testimony obtained at the hearing on the motion for new trial in which Harris stated that, although he had discussed with Orson's mother the fact that the check in question was drawn on an account of which he was an authorized user, he had not researched the law initially to determine if the facts of the particular case satisfied the elements of forgery.

Because the decision to plead guilty is the personal decision of the accused, *Jackson v. State*, 766 S.W.2d 504, 508 (Tex. Crim. App. 1985), the duty of counsel when a plea of guilty is entered is to ascertain whether the plea is being entered knowingly and voluntarily.  *Butler v. State*, 499 S.W.2d 136, 139 (Tex. Crim. App. 1973).  When a defendant enters a guilty plea knowingly and voluntarily, "counsel need not undertake the same magnitude of independent factual investigation . . . as would be required in a contested proceeding."  *Valle v. State*, 963 S.W.2d 904, 910 (Tex. App.—Texarkana 1998, pet. ref'd).  Although "[c]ounsel is required to determine whether any defenses to the commission of the crime may exist so counsel may protect the client's rights, . . . when no possible defenses appear, counsel is not required to pursue the investigation to the extent he or she would to prepare for a trial."  *Toupal*, 926 S.W.2d at 608.

---

[2]  His argument rests upon the assertion that he was an authorized user of the account on which he intended the check in question to be drafted and that he did not know at the time he cashed the check that the account had been closed by his mother.  On appeal, Orson cites Texas cases, including *Green v. State*, 761 S.W.2d 824 (Tex. App.—Dallas 1988, no pet.); *Dunlap v. State*, 332 S.W.2d 727 (Tex. Crim. App. 1960); *Carruth & White v. State*, 762 S.W.2d 364 (Tex. App.—Fort Worth 1988, no pet.); and *Smith v. State*, 379 S.W.2d 326 (Tex. Crim. App. 1964), which he argues support his position that he did not have an "intent to defraud."

5

With respect to the investigation performed by trial counsel, Harris testified at the hearing on the motion for new trial that he met with Orson at least four times and that he spoke with him several times by telephone.[3] He further testified that he met with the prosecutor in this case at least three times, obtained "all but open file" discovery, and also obtained plea recommendations that were rejected by Orson. Harris stated that he had asked Orson to compose and send to him a written statement of what he thought transpired in respect to the alleged forgery, and that Orson had in fact sent him a written statement. Harris also spoke with Orson's mother about the facts surrounding the case. In his testimony, Harris stated that the information he had gathered as a result of these efforts "took some sorting out," but he concluded that Orson had fabricated a series of checks, that the business named on the checks did not exist, and that he had taken them to different check cashing organizations and requested they cash them. Harris further testified that he advised Orson that Orson had a right to take his case to trial, but Orson told him that he had a prior criminal record and "did not want to go that route."[4] Even after the October hearing in which the first guilty plea was withdrawn, it seemed clear to Harris from conversations he had had with Orson after the hearing that his client had no desire to go to trial. As Harris stated at the hearing on the motion for new trial:

---

[3] Harris testified that his telephone records show 27 phone calls made between himself and Orson.

[4] Orson's prior criminal record, as admitted by Orson at the hearing on the motion for new trial, includes a conviction of possession of cocaine, a conviction of attempted forgery, and a conviction of forgery. The forgery conviction, according to Orson, arose under essentially the same set of circumstances as this present case. In that case, after apparently paying restitution for the check, Orson was given a punishment that was reduced to a misdemeanor level. The State argues here that Orson was hoping for a similar punishment in the present case, and that his problem is with his sentence, not the voluntariness of his plea or the effectiveness of his counsel.

6

Mr. Orson gave me the impression . . . that he did not want to go through a jury trial, he was willing to plead. He wanted to proceed on with the punishment type trial to arrive at that. And again, provided me, in fact, all the way back to the October date, he provided me with verification of his employment and information concerning Scope Ministries, all of which I considered to be punishment information. Another—there was provided to me early in July was a judgment sentence out of Lubbock County and that judgment sentence reflects that Mr. Orson had pled on forgery, forgery of a financial instrument . . . . [H]e sent me those papers under the hope I think that he would arrive at the same or similar sentence in Bell County. And it very clearly says that he was convicted of a forgery of a financial instrument.

Given this evidence, we cannot say that, by the time Orson expressed his desire to enter a guilty plea at the November hearing, defense counsel had not gathered enough information to make a reasonable judgment that there were no available defenses and that no further investigation was necessary. We agree with the State that the effectiveness of Harris's investigation must be analyzed with the desire of Orson to plead guilty in mind. Moreover, Orson has not demonstrated that, had Harris done a better job investigating the facts and the law, Harris would have changed his recommendation as to the plea, and the outcome at trial would have been different. In response to Orson's argument that, if he committed any offense, it was theft, not forgery, we note that there are still significant questions of fact as to whether the crime of forgery was committed that would have had to be decided at trial. Based on the facts of the case as understood by Harris and on Orson's desire not to go before a jury, Harris could reasonably have advised Orson that a guilty plea to the court provided the best possibility for receiving a lesser punishment. Thus, we find that counsel's representation in this case did not fall below an objective standard of reasonableness.

Even if the representation fell below an objective standard of reasonableness, however, Orson has neither alleged on appeal nor shown beyond a reasonable probability that, were it not for counsel's errors, he would not have pleaded guilty to the offense of forgery and would have

insisted on going to trial. *Toupal*, 926 S.W.2d at 608. The only evidence on record we have found of Orson's desires regarding a trial is the testimony offered by Harris, previously quoted in this opinion, that Orson wanted to avoid trial. Because Orson fails to demonstrate that he would have insisted on going to trial had he been better informed about the application of the forgery statute, Orson fails to meet his burden to prove prejudice. *Hill v. Lockhart*, 474 U.S. at 60. We note that he was properly admonished prior to his plea at the November hearing, and that he subsequently testified at the hearing on the motion for new trial that he understood what he was doing and was mentally competent at the time he entered his guilty plea. In examining the record as a whole, we find that Orson fully understood the consequences of his guilty plea and entered it knowingly and voluntarily. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998).

## CONCLUSION

We conclude that Orson entered his plea of guilty voluntarily and knowingly, and that his trial counsel's alleged failure to investigate the facts and circumstances leading to the forgery indictment did not constitute ineffective assistance. We thus affirm the judgment of the trial court.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: February 17, 2005

Do Not Publish

8