Opinion issued June 28, 2007


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00307-CR






PEDRO ENRIQUE POSADA, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 176th District Court

Harris County, Texas

Trial Court Cause No. 1037624






MEMORANDUM OPINION


 Appellant, Pedro Enrique Posada, pleaded not guilty to aggravated sexual
assault of a child. See Tex. Pen. Code Ann. § 22.021(a) (Vernon Supp. 2006). After
finding him guilty of the offense, the jury assessed his punishment at life in prison. 
In his sole point of error, appellant argues that he received ineffective assistance of
counsel.

 We affirm.

Background


 The complainant, J.R., lived with her grandmother, her mother, her mother's
husband, and her two uncles. J.R. testified that, in 2002 and 2003, her grandfather,
appellant, sexually assaulted her. J.R. recalled that appellant first touched her in the
summer of 2002. J.R. testified that, when she was 11, appellant came into her room
and placed his penis in her vagina for 45 minutes. Appellant told J.R. that, if she told
anyone, he would kill her mother. J.R. testified to another sexual assault by appellant
that occurred two days later. This second incident lasted 55 minutes. Appellant
continued to threaten her after the second incident. J.R. testified to a third incident
in which she went to her grandfather, appellant's, house so that her aunt, Xiomara
Martinez, appellant's daughter, could help her with some homework. Appellant took
J.R. to his bedroom, where he assaulted her again. J.R. also described an incident that
happened in 2003, when appellant took her fishing in Galveston. On their way home,
appellant pulled over and sexually assaulted her a fourth time.

 After the jury found appellant guilty of sexual assault, appellant filed a motion
for new trial. After a hearing, the trial court denied appellant's motion for new trial. 
Ineffective Assistance of Counsel


 In his sole point of error, appellant argues that he received ineffective
assistance of counsel. Appellant specifically argues that his trial counsel was
ineffective by failing to transcribe audio tapes and that such inaction constitutes a
failure to investigate the case. Appellant also argues that trial counsel's stated reason
for not attempting to admit the audio tapes at trial did not represent a valid trial
strategy.

 We review a trial court's ruling on a motion for new trial under an
abuse-of-discretion standard. Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim.
App. 2004). Where, as here, the motion for new trial alleges ineffective assistance
of counsel, we must determine whether the trial court's determination of the
ineffective assistance claim and denial of the motion for new trial were clearly wrong
and outside the zone of reasonable disagreement. Keller v. State, 125 S.W.3d 600,
606-07 (Tex. App.--Houston [1st Dist.] 2003), pet. dism'd, improvidently granted,
146 S.W.3d 677, 677-78 (Tex. Crim. App. 2004).

 To be entitled to a new trial based on a claim for ineffective assistance of
counsel, a defendant must demonstrate on appeal that (1) counsel's performance was
so deficient that he was not functioning as acceptable counsel under the sixth
amendment and (2) but for counsel's error, the result of the proceedings would have
been different. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064
(1984); Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.--Houston [1st Dist.] 1996,
no pet.). Assertions of ineffective assistance of counsel must be firmly founded in the
record. Bone v. State, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). In the absence
of a record reference concerning counsel's reasoning, we must generally presume that
appellant's trial counsel had a plausible reason for his actions. See Thompson v.
State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

 It is appellant's burden to prove ineffective assistance and he must overcome
the strong presumption that, under the circumstances, the challenged action might be
considered sound trial strategy. Gamble, 916 S.W.2d at 93. A reviewing court
determines the reasonableness of counsel's challenged conduct in context and views
it as of the time of counsel's conduct. Andrews v. State, 159 S.W.3d 98, 101 (Tex.
Crim. App. 2005). In reviewing counsel's performance, we look to the totality of the
representation to determine the effectiveness of counsel, indulging a strong
presumption that his performance falls within the wide range of reasonable
professional assistance or trial strategy. Thompson, 9 S.W.3d at 813-14. 

 The evidence heard at the motion for new trial hearing shows that Xiomara
Martinez, appellant's daughter and J.R.'s aunt, possessed a couple of audio tapes,
which she gave to appellant's trial counsel about a year before appellant's trial. 
Randy Martin, appellant's trial counsel, testified at the hearing that he was given one
tape, which contained a secret tape-recorded conversation between appellant and J.R. 
Martin testified that he also received two more tapes from Xiomara but that he was
instructed not to listen to the two additional tapes. However, Martin listened to the
first tape and had it translated from Spanish to English by his legal assistant. Martin
described the contents of the tape as "[J.R.] said my mom's making me say these
things, and then they would go off into she wanted a gift of some kind, it was about,
and [appellant] was going to spend money to get her a game. And then it went back
and forth and then they talked about other men in the household there, too, I believe."

 Martin testified that appellant's defense in the case was that J.R. "was not
telling the truth, that other men had done this to her, and they were friends of her
mother and they had disappeared and that is who is responsible for this act and not
her grandfather." Martin agreed that an audio tape establishing that the victim was
lying would be very important, but he testified that it would have come with other
consequences. Specifically, Martin testified to his belief that the audio tape could
have opened the door to allow the admission of appellant's extraneous offense
pursuant to Rule 404(b) or some other rule. See Tex. R. Evid. 404(b). Martin was
asked whether he had given appellant the option to make the decision as to whether
he wanted the tape played in trial, to which Martin answered "No, I don't think I did."
Martin further explained how the admission of the tape would allow the admission
of an extraneous offense: "J.R. is saying this because my mama's making me, why
would your mama hate your grandfather so to make you do this. I felt it would open
the door and let in the extraneous [evidence]."

 Martin stated that if the tape had been admitted and the extraneous evidence
had not come in, it was probable that the result of the trial would have been different,
but his trial strategy was not to present the tape for fear of opening the door to an
extraneous offense.

 Failure to Transcribe Audio Tapes

 Appellant first argues that his trial counsel failed to investigate his case by
failing to get a transcription of the "exculpatory" tapes that were provided to him. 
Appellant maintains that Martin did not get a transcription or translation of the tapes,
but instead had his legal assistant give him a summary. We disagree with appellant's
characterization of the facts. 

 Martin testified that, one year before trial, Xiomara gave him one audio tape
but he did not understand Spanish, so he had to get a translation of the first tape. He
directed his legal assistant to listen to the tape and to tell him what was said. (1)
Appellant cites no authority that trial counsel acts deficiently if he does not get a
transcription of an audio tape that has been handed to him, and we are aware of none. 
Because he could not understand the contents of the audiotape himself, Martin
properly had the audiotape translated. Thus, we conclude that appellant has not
carried his burden to show that his trial counsel acted deficiently. Moreover,
appellant has not argued that there is a reasonable probability that the result of his
trial likely would have been different had Martin obtained a transcription of the audio
tape. See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

 Failure to Use Contents of Tapes to Impeach 

 Appellant further argues that his trial counsel failed to use the contents of the
tapes to impeach J.R.'s credibility. At the motion for new trial hearing, Martin
testified that he did not attempt to admit the tape because of his trial strategy. 
Specifically, Martin testified that, if the trial court had admitted the audio tape, the
State could possibly have admitted appellant's extraneous offense of sexual assault
during the guilt-innocence stage of trial. Martin believed that any benefit gained by
admitting the tape would be offset by the admission of an extraneous offense. We
agree with the State that Martin's proffered reason for not admitting the tape was a
valid trial strategy. See Ex parte McFarland, 63 S.W.3d 743, 756 (Tex. Crim. App.
2005) ("A defense strategy that avoids the introduction of extraneous offenses under
Rule 404(b) is not constitutionally ineffective."). We conclude that, because trial
counsel's evidentiary decision was based on a valid trial strategy, appellant has not
shown that trial counsel performed deficiently.

 Failure to Confer with Client

 Appellant next argues that his trial counsel did not adequately confer with him
regarding the decision to admit the audio tape. The record reflects that Martin speaks
English while appellant speaks Spanish. Therefore, Martin talked with Xiomara,
appellant's daughter, who then communicated with appellant. Martin described
Xiomara as the person who was "more or less in charge" and the person who was in
charge of communicating with him. Martin explained that Xiomara probably asked
him to admit the tapes during trial because "they thought the tape was a big thing. I
thought it was a dangerous thing."

 When asked if he explained the tape to his client, Martin responded, "I always
had to talk to Xiomara to explain things like that and they had asked--they were
very--they very much liked the tape." Martin admitted that he did not give his client
the option or the ability to make the decision whether he wanted the tape played at
trial. However, Xiomara testified that, before trial, she asked Martin if he could use
the tapes, to which he responded that the tapes were "not sufficient enough." 

 "[T]he criminal defense lawyer controls the progress of a case, while the client
confronts only three personal decisions: his plea to the charge, whether to be tried
by a jury, and whether to testify on his own behalf." Jackson v. State, 766 S.W.2d
504, 508 (Tex. Crim. App. 1985), modified on other grounds on remand from the
United States Supreme Court, 766 S.W.2d 518 (Tex. Crim. App. 1988); Graves v.
State, 803 S.W.2d 342, 346 (Tex. App.--Houston [14th Dist.] 1990, pet. ref'd). 
Appellant has not shown that counsel acted deficiently by failing to confer with
appellant regarding this evidentiary decision. Moreover, we cannot say that trial
counsel acted deficiently because the record reflects that trial counsel discussed the
tape with Xiomara prior to trial.

 We overrule appellant's sole point of error.

Conclusion


 We affirm the judgment of the trial court.


 



 Evelyn V. Keyes

 Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.

Do not publish. Tex. R. App. P. 47.2(b).
1. To the extent that appellant argues that trial counsel acted deficiently in failing to
listen to all the tapes, we conclude that appellant has not satisfied the first prong of
ineffective assistance. Martin testified that Xiomara dropped off three tapes. Shortly
thereafter, Xiomara called Martin, and she instructed him not to listen to the other
tapes and that she would be picking them up. Martin complied with her instructions
and did not listen to the other tapes. Thus, because Martin was asked not to review
the other tapes, appellant cannot now contend on appeal that counsel acted deficient
in this regard.