NO. 07-08-0357-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 5, 2010
_____

NEIL SCOTT MASON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 31ST DISTRICT COURT OF GRAY COUNTY;

NO. 7933; HONORABLE STEVEN EMMERT, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Neil Scott Mason, appeals his conviction for the offense of possession with intent to deliver a controlled substance, methamphetamine, in an amount of 200 grams or more but less than 400 grams,[1] enhanced by two prior felony convictions. Appellant was sentenced to confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for 99 years and fined $50,000. Appellant appeals, via four issues, contending that: 1) the evidence was legally insufficient; 2) the

---

[1]See TEX. HEALTH & SAFETY CODE ANN. § 481.112(e) (Vernon Supp. 2009).

evidence was factually insufficient; 3) he was denied effective assistance of counsel; and 4) his constitutional right to the presumption of innocence was violated when the jury was allowed to see him in shackles on two occasions. We affirm.

## Factual Background

On January 25, 2008, Deputy Zach Kidd of the Gray County Sheriff's Office was on patrol in rural Gray County when he observed a vehicle on County Road F driving down a hill. What got the deputy's attention was that the vehicle did not proceed directly up the far side of the hill, but rather it stayed out of sight at the bottom of the hill for a short period of time and then proceeded up the other side. While going up the far side of the hill, the vehicle turned out its lights and stopped at the top of the hill. Kidd drove to the location of the vehicle and found it stopped in the middle of the road with appellant, on the driver's side, and Kenneth Putman, the co-defendant, on the passenger side, standing outside of the vehicle. This struck Kidd as odd because it was a cold January evening. Upon walking up to the vehicle, Kidd noticed a very strong odor of a solvent and observed that all the windows on the vehicle were down. Appellant and Putman explained that they had run out of gas. Both appellant and Putman exhibited nervousness which caused Kidd to decide to pat them down for weapons. During the pat down, Kidd noticed a blue duffle bag in the ditch approximately 15 feet from the vehicle. Another deputy, Steven White, arrived to assist Kidd. Kidd then retrieved the duffle bag and inside saw coffee filters, a pill grinder, plastic baggies, pickling salt, plastic tubing, and other items. This further aroused Kidd's suspicions about appellant's activities and Kidd then obtained permission to search the vehicle. During the initial search of the vehicle, White found a number of other items that

2

might be associated with the manufacture of methamphetamine. One of the items was a glass jar with an unknown brown liquid. As a result of the items found, Kidd requested the assistance of Deputy Cary Rushing, a certified methamphetamine lab technician.

While waiting for Rushing, DPS Trooper Rafael Ortiz came to the location of the stop and Kidd asked him to go back to the bottom of the hill, where Kidd thought the vehicle stopped, and see if there were any items in that area. Upon going to that location, Ortiz found a black backpack that contained other items associated with the manufacture of methamphetamine. A bottle of clear liquid was found in the backpack. On the other side of the road from the backpack, there was a Sterilite pitcher containing a pinkish liquid that was bubbling and covered with frost.

Rushing arrived at the location and supervised the collection of the evidence. In processing the scene, Rushing treated the site as if it was an active methamphetamine lab due to the unknown liquids found and the appearance of one container still in the process of an active unknown chemical reaction. Rushing subsequently turned over all of the suspected methamphetamine to the DPS lab in Amarillo for testing. Of the four items turned in for testing, two tested positive for methamphetamine.

After hearing the State's evidence, a jury convicted appellant of possession with intent to distribute methamphetamine of an amount of 200 grams or more but less than 400 grams. During the punishment portion of the trial, the State presented evidence of three prior felony convictions of appellant. After the State closed presentation of its evidence on punishment, appellant rested without presenting any evidence. The jury

returned a verdict of true as to the two alleged felony enhancement paragraphs and sentenced appellant to confinement in the ID-TDCJ for 99 years with a fine of $50,000.

Appellant contends that the evidence presented to the jury was legally and factually insufficient because the State failed to link him to the items that tested positive for methamphetamine. Further, appellant contends that his counsel was ineffective because he failed to call the co-defendant as a witness and failed to investigate or call possible punishment witnesses. Finally, appellant contends that his constitutional right to the presumption of innocence was violated when the jury was allowed to see appellant in shackles on two occasions. Disagreeing with appellant's contentions, we affirm the judgment of the trial court.

## Sufficiency of the Evidence

Appellant challenges both legal and factual sufficiency. Therefore, we are required to conduct an analysis of the legal sufficiency of the evidence first and then, only if we find the evidence to be legally sufficient, do we analyze the factual sufficiency of the evidence. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).

### Standard of Review

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133

S.W.3d 618, 620 (Tex.Crim.App. 2004).  In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence.  Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).  We measure the legal sufficiency of the evidence against a hypothetically correct jury charge.  See Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt.  See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006).  In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict.  See id. at 417.  As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict.  See id. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).  The Court of Criminal Appeals has recently declared that, when reviewing the evidence for factual sufficiency, the reviewing court should measure the evidence in a neutral manner against a "hypothetically correct jury charge." Vega v. State, 267 S.W.3d 912, 915 (Tex.Crim.App. 2008) (citing Wooley v. State, 273 S.W.3d 260, 268 (Tex.Crim.App. 2008)).

5

<u>Legal Sufficiency</u>

Appellant contends that the State failed to present legally sufficient evidence linking him to the items that tested positive for methamphetamine. To prove appellant guilty of the indicted offense, the State had to prove: 1) appellant; 2) intentionally or knowingly; 3) possessed; 4) a controlled substance, methamphetamine; 5) in an amount of 200 grams or more but less than 400 grams. <u>See</u> TEX. HEALTH & SAFETY CODE ANN. § 481.112(e). Possession means the actual care, custody, control, or management of the methamphetamine in question. <u>See</u> <u>id</u>. § 481.002(38). To prove that appellant possessed the methamphetamine in question, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. <u>See</u> <u>Poindexter v. State</u>, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005). The evidence establishing possession may be direct or circumstantial, however, it must establish that appellant's connection to the methamphetamine was more than just fortuitous. <u>Id</u>. at 405-06. Further, appellant's possession does not have to be exclusive. <u>See</u> <u>Cude v. State</u>, 716 S.W.2d 46, 47 (Tex.Crim.App. 1986). Joint possession is sufficient. <u>Id</u>. Whether the possession is exclusive or joint with another actor, there must be evidence, other than presence alone, that would lead the fact finder to rationally conclude beyond a reasonable doubt that appellant exercised care, custody, control, or management of the methamphetamine. <u>See</u> <u>Evans v. State</u>, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006).

In Evans, the Texas Court of Criminal Appeals set forth a list of links that had been recognized by Texas courts. Id. at 162 n.12. The list is non-exclusive and includes the following:

> 1) the defendant's presence when a search is conducted; 2) whether the contraband was in plain view; 3) the defendant's proximity to and the accessibility of the narcotic; 4) whether the defendant was under the influence of narcotics when arrested; 5) whether the defendant possessed other contraband or narcotics when arrested; 6) whether the defendant made incriminating statements when arrested; 7) whether the defendant attempted to flee; 8) whether the defendant made furtive gestures; 9) whether there was an odor of contraband; 10) whether other contraband or drug paraphernalia were present; 11) whether the defendant owned or had the right to possess the place where the drugs were found; 12) whether the place where the drugs were found was enclosed; 13) whether the defendant was found with a large amount of cash; and 14) whether the conduct of the defendant indicated a consciousness of guilt.

Id. It is not the number of links found to be present that is ultimately important, rather it is the logical force of all of the evidence, both direct and circumstantial. Id. at 162.

In assessing the record for links to the appellant, we begin with the fact that appellant was driving the vehicle, as he admitted to Kidd. Another link the jury could have considered was the fact that the vehicle turned off all of its lights before coming to a stop at the top of the hill. This could indicate an attempt to hide from detection. Appellant was acting nervous when Kidd arrived on the scene. There was a strong smell of a solvent emitting from the vehicle. The State's witnesses testified that the smell was like what you might smell around the manufacturing of methamphetamine. When Trooper Ortiz arrived on the scene, he was sent to the bottom of the hill, where Kidd testified that the vehicle stopped for a minute or two. Ortiz testified that he smelled a strong smell of a solvent or

7

chemical reaction in the area immediately around the black backpack. A blue duffle bag, found in the ditch adjacent to the vehicle, contained ingredients and equipment necessary to manufacture methamphetamine. Additional ingredients and equipment used in the manufacturing of methamphetamine were found in a safe in the back seat of the vehicle appellant had been driving. The duffle bag is linked to the vehicle appellant was driving by a plastic lid found in the vehicle that was identical to one found in the blue duffle bag. Also found in the duffle bag and in the vehicle were plastic baggies of the same size and type and coffee filters of the same size and type. Kidd further testified that there was a box of pickling salt found in the duffle bag and there appeared to be pickling salt spilled inside the vehicle. Also found in and near the duffle bag were containers containing Coleman camping fuel, which was characterized as a type of solvent used in the manufacture of methamphetamine. Several of the officers testified that the passenger side door of the vehicle had a red powdery substance on it. Later, a similar red powdery substance was found in a Sterilite pitcher found on the other side of the road from the black backpack. When Ortiz found the pitcher, he described it as having an ongoing chemical reaction of some sort and was frosted over on the outside of the pitcher. Additionally, located inside the backpack was a "Coke like bottle" that contained a clear liquid and had a hose sticking out of the top of the bottle. Deputy Rushing, the certified methamphetamine lab technician, also observed the Sterilite pitcher and similarly testified that it was in an ongoing state of chemical reaction. He later testified that such a reaction could be expected to last for between 45 minutes and two hours. After taking custody of the pitcher, Rushing allowed the chemical reaction to complete and then placed the contents in a container that was sent for analysis to the DPS lab. This item tested positive for methamphetamine and

8

weighed 210.61 grams. Another Sterilite pitcher with a residue in it was located in the area immediately adjacent to the blue duffle bag. The contents of this pitcher was also submitted to the DPS lab and tested positive for methamphetamine and weighed 89.26 grams.

In the final analysis, what the evidence revealed is that appellant was driving a vehicle from which eminated a strong smell of a chemical solvent. Chemical solvents were then discovered near the vehicle. A pink powder was discovered on the outside and bottom of the passenger door of the vehicle and the same sort of pink powder residue was discovered in the Sterilite pitchers found near the backpack. Another Sterilite pitcher was found next to the duffle bag and this contained some of the methamphetamine. Inside the vehicle driven by appellant, a safe containing items necessary to manufacture methamphetamine was found. This safe was in open view, and according to the officers, was not locked. Finally, Kidd, the officer who initially observed the vehicle, stated the vehicle was out of his sight at the bottom of the hill for about a minute or two. This is the exact location where the larger amount of contraband was found.

The jury heard all of this evidence and we may presume that, in its deliberative process, weighed the evidence, made credibility determinations, considered alternative explanations submitted by appellant, and came to their conclusion that appellant was guilty of possession with intent to deliver methamphetamine. Evans, 202 S.W.3d at 164. When we apply this determination to the standard of review for legal sufficiency, we cannot say that the jury acted irrationally in finding appellant guilty of possessing the

9

methamphetamine.  Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620.  Accordingly, appellant's contention that the evidence was legally insufficient is overruled.

Factual Sufficiency

We next review the evidence in a neutral manner to determine whether the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt.  Watson, 204 S.W.3d at 415.  Giving deference to the jury's findings that are supported by the record, we are still faced with the fact that the evidence, although circumstantial in nature, still links appellant to the vehicle, through the vehicle to all of the necessary tools to manufacture and distribute methamphetamine, and ultimately to the methamphetamine found at the site on the night of January 25, 2008.  Appellant's primary contention is that none of the methamphetamine was found in the vehicle and that the State did not produce any fingerprints or other type of evidence that would directly link the methamphetamine in question to appellant.  Therefore, appellant posits there is factually insufficient evidence to prove he possessed the methamphetamine in question.  While the contention regarding lack of direct evidence is correct, it is also not the relevant inquiry.  Links to contraband can be proven by circumstantial evidence.  Poindexter, 153 S.W.3d at 405-06.  We find that the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt.  Watson, 204 S.W.3d at 415.  Accordingly, appellant's contention that the evidence was factually insufficient is overruled.

Ineffective Assistance of Counsel

In appellant's next issue, he contends that he was denied effective assistance of counsel on two specific occasions. First, appellant contends that trial counsel failed to call his co-defendant who, according to appellant, had previously admitted the methamphetamine in question belonged to the co-defendant. Second, appellant contends that trial counsel failed to properly investigate or call possible witnesses at the punishment hearing to help mitigate appellant's sentence.

Standard of Review

In determining whether counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel, Texas courts adhere to the two-pronged test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v. State, 726 S.W.2d 53, 55-56 (Tex.Crim.App. 1986).[2] Judicial review of an ineffective assistance of counsel claim must be highly deferential to trial counsel and avoid using hindsight to evaluate counsel's actions. Ingham v. State, 679 S.W.2d 503, 509 (Tex.Crim.App. 1984). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 690. The burden is on appellant to prove by a preponderance of the evidence that counsel was ineffective. See McFarland v. State, 928 S.W.2d 482, 500 (Tex.Crim.App. 1996) (en banc). The defendant must first prove that counsel's performance was deficient, *i.e.*, that counsel's assistance fell below an objective standard of reasonableness. Id. If appellant has demonstrated deficient assistance of counsel, it is then necessary that

_____

[2] The same standard of review applies to contentions arising under Article 1, Section 10, of the Texas Constitution.

11

appellant affirmatively prove prejudice as a result of the deficient assistance. Id. In proving prejudice, appellant must prove a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Hernandez, 726 S.W.2d at 55.

Any allegation of ineffective assistance of counsel must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. McFarland, 928 S.W.2d at 500. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. Id. Absent both showings, an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. Ex parte Menchaca, 854 S.W.2d 128, 131 (Tex.Crim.App. 1993). Appellate courts look to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. Ex parte Felton, 815 S.W.2d 733, 735 (Tex.Crim.App. 1991). It is possible that a single egregious error of omission or commission by appellant's counsel constitutes ineffective assistance. Id.; Jackson v. State, 766 S.W.2d 504, 508 (Tex.Crim.App. 1985) (modified on other grounds on remand from the United States Supreme Court in 766 S.W.2d 518 (Tex.Crim.App. 1988)).

Analysis

A review of the record reveals that no motion for new trial was filed and, thus, only the trial record is before us to support the contentions of appellant. As to the first

contention regarding the failure to call the co-defendant to testify, the record is totally silent about a number of important inquiries. First, was the co-defendant even available. Second, had the co-defendant already been convicted or was he awaiting trial. Third, was the co-defendant even willing to so testify. The record is devoid of any information regarding these issues. These are matters that impact the decision about whether to call a co-defendant. Understanding that the burden is upon the appellant to prove ineffective assistance of counsel, we cannot say that the failure to call the co-defendant was ineffective. McFarland, 928 S.W.2d at 500.

The record reveals that, during the punishment hearing, the State proved up three prior felony offenses committed by appellant. The State then rested its case. Appellant rested without calling any witnesses. It is true that the failure to investigate all aspects of a case, including punishment, can be grounds to find that counsel rendered ineffective assistance to an appellant. See McFarland, 928 S.W.2d at 501. However, we cannot equate not calling any witnesses to testify to a failure to investigate, absent something more in the record than what has been present to us. The record must support the assertions of appellant, for we are limited to the record before us. Id. at 500. The record in this case is devoid of any evidence about why, be it for strategic reasons or otherwise, trial counsel elected to rest the punishment hearing without putting on any evidence. Because there is a strong presumption that trial counsel's actions fell within the wide range of reasonable professional assistance, we cannot say appellant was rendered ineffective assistance of counsel. Strickland, 466 U.S. at 690.

13

Therefore, appellant's contention regarding the two alleged incidents of ineffective assistance of counsel is overruled.

### Presumption of Innocence

By his final issue, appellant contends that he was denied his constitutionally guaranteed presumption of innocence because the jury was allowed to see him in shackles on two occasions. In his brief, appellant fails to cite this court to any reference about where, when, or the circumstances of how this occurred. In fact, all that is said is that appellant claims that this occurred on two occasions. However, a search of the record fails to document this claim. The record contains no objection by counsel nor does it contain any reference to such incidents. As an appellate court, we are limited to the record before us and we cannot indulge in speculation or guess work. See Amador v. State, 221 S.W.3d 666, 675 (Tex.Crim.App. 2007). Because we find no support in the record for the alleged incidents of appellant being seen wearing shackles, we overrule appellant's issue.

### Conclusion

Having overruled appellant's contentions, the judgment of the trial court is affirmed.

Mackey K. Hancock
Justice

Do not publish.

14