ACCEPTED
01-14-00993-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/23/2015 10:05:23 PM
CHRISTOPHER PRINE
CLERK

**No. 01-14-00993-CR**

In the

Court of Appeals

For the

First District of Texas

At Houston

———————◆———————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

7/23/2015 10:05:23 PM

CHRISTOPHER A. PRINE
Clerk

**No. 1387050**

In the 178th District Court

Of Harris County, Texas

———————◆———————

**DEMETRUS HORTON**

*Appellant*

V.

**THE STATE OF TEXAS**

*Appellee*

———————◆———————

STATE'S APPELLATE BRIEF

———————◆———————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**PATRICIA MCLEAN**
Assistant District Attorney
Harris County, Texas
mclean_patricia@dao.hctx.net

**ERIK LOCASCIO**
Assistant District Attorney
Harris County, Texas

1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713/755-5826
FAX No.: 713/755-5809

*Counsel for Appellee*

ORAL ARGUMENT CONDITIONALLY WAIVED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 39.1, the State waives oral argument because the briefs in this case adequately address the issues of fact and law to the Court. However, should the Court desire oral argument, the State requests oral argument.

## IDENTIFICATION OF THE PARTIES

Counsel for the State:

**Devon Anderson**—District Attorney of Harris County

**Erik Locascio**—Assistant District Attorney at trial

**Patricia McLean**—Assistant District Attorney on appeal

Appellant:

**Demetrus Horton**

Counsel for Appellant:

**Brian Coyne**—Defense counsel at trial

**Tom Moran**—Defense counsel on appeal

Trial Judge:

**Honorable Leslie Yates**

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT.................................................i

IDENTIFICATION OF THE PARTIES ................................................... ii

INDEX OF AUTHORITIES.................................................iv

STATEMENT OF THE CASE.................................................1

STATEMENT OF FACTS .................................................1

SUMMARY OF THE ARGUMENT .................................................7

RESPONSE TO APPELLANT'S SECOND POINT OF ERROR.................................7

**I. The trial court was within its discretion to deny appellant's motion to suppress the drugs found in his sock**.................................................8

*A. The odor of PCP emitting from appellant's vehicle provided probable cause to search appellant for drugs.*.................................................10

*B. The warrantless search of appellant's sock was reasonable and permissible due to exigent circumstances*.................................................13

**II. Even if this Court finds the PCP cigarettes were erroneously admitted into evidence, the admission was harmless error.** .................................................17

RESPONSE TO APPELLANT'S FIRST POINT OF ERROR .................................21

**I. Appellant failed to show his trial counsel's performance fell below an objective standard of reasonableness.** .................................................23

**II. Appellant failed to show that any deficient performance by his trial counsel would have changed the result of the proceeding.**.................................................25

CONCLUSION .................................................26

CERTIFICATE OF SERVICE .................................................27

CERTIFICATE OF COMPLIANCE .................................................27

# INDEX OF AUTHORITIES

## CASES

*Amador v. State*,
221 S.W.3d 666 (Tex. Crim. App. 2007)..............................................................8

*Ben v. State*,
No. 01-03-00426-CR, 2004 WL 966337 (Tex. App.—Houston [1st Dist.] May 6, 2004, pet. ref'd) (mem. op., not designated for publication)..............................11

*Bone v. State*,
77 S.W.3d 828 (Tex. Crim. App. 2002)...............................................................23

*Brown v. State*,
481 S.W.2d 106 (Tex. Crim. App. 1972)..........................................................9, 10

*Buquo v. State*,
No. 14-04-00956-CR, 2006 WL 914623 (Tex. App.—Houston [14th Dist.] Apr. 6, 2006, pet. ref'd) (mem. op., not designated for publication)........ 13, 14, 15, 17

*Cannon v. State*,
668 S.W.2d 401 (Tex. Crim. App. 1984).............................................................21

*Carmouche v. State*,
10 S.W.3d 323 (Tex. Crim. App. 2000)..............................................................7, 8

*Carroll v. United States*,
267 U.S. 132 (1925) ............................................................................................9

*Chimel v. California*,
395 U.S. 752 (1969) ............................................................................................9

*Coolidge v. New Hampshire*,
403 U.S. 443 (1971) ..........................................................................................10

*Crocker v. State*,
573 S.W.2d 190 (Tex. Crim. App. [Panel Op.] 1978) .........................................18

*Cupp v. Murphy*,
412 U.S. 291 (1973) ............................................................................................9

*Donley v. State*,
435 S.W.2d 518 (Tex. Crim. App. 1969)................................................................14

*Dyke v. Taylor Implement Mfg. Co.*,
391 U.S. 216 (1968) .............................................................................................10

*Espinoza v. United States*,
278 F.2d 802 (5th Cir. 1960), *cert. denied*, 364 U.S. 827 (1960) ........................14

*Estrada v. State*,
154 S.W.3d 604 (Tex. Crim. App. 2005)...............................................................12

*Ex parte Felton*,
815 S.W.2d 733 (Tex. Crim. App. 1991)...............................................................22

*Ex parte Welborn*,
785 S.W.2d 391 (Tex. Crim. App. 1990)...............................................................22

*Ex parte Menchaca*,
854 S.W.2d 128 (Tex. Crim. App. 1993)...............................................................21

*Frangias v. State*,
450 S.W.3d 125 (Tex. Crim. App. 2013)...............................................................22

*Fry v. State*,
493 S.W.2d 758 (Tex. Crim. App. 1972)...............................................................10

*Garcia v. State*,
No. 13-12-00214-CR, 2013 WL 3326027 (Tex. App.—Corpus Christi June 27,
2013, no pet.) (mem. op., not designated for publication)...................................11

*Gutierrez v. State*,
221 S.W.3d 680 (Tex. Crim. App. 2007)...............................................................13

*Guzman v. State*,
955 S.W.2d 85 (Tex. Crim. App. 1997)...................................................................7

*Hernandez v. State*,
548 S.W.2d 904 (Tex. Crim. App. 1977)...............................................................14

*Hitchcock v. State*,
118 S.W.3d 844 (Tex. App.—Texarkana 2003, pet. ref'd) .....................11, 15, 16

*Jackson v. State*,
766 S.W.2d 504 (Tex. Crim. App. 1985), *modified on other grounds on remand from U.S. Supreme Court*, *Jackson v. State*, 766 S.W.2d 518 (Tex. Crim. App. 1988).......................................................................................22

*Johnson v. State*,
397 S.W.2d 441 (Tex. Crim. App. 1965)...........................................................14

*Johnson v. State*,
No. 01-10-00134-CR, 2011 WL 5428969 (Tex. App.—Houston [1st Dist.] Nov. 10, 2011, pet. ref'd) (mem. op., not designated for publication) .........................10

*Johnson v. United States*,
333 U.S. 10 (1948) ...........................................................................................10

*Jordan v. State*,
394 S.W.3d 58 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) ......... 10, 12, 13

*Katz v. United States*,
389 U.S. 347 (1967) .........................................................................................10

*Ker v. California*,
374 U.S. 23 (1963) .............................................................................................9

*Leday v. State*,
983 S.W.2d 713 (Tex. Crim. App. 1998)............................................... 18, 19, 20

*Lemons v. State*,
135 S.W.3d 878 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ......................25

*Maryland v. Dyson*,
527 U.S. 465 (1999) ...........................................................................................8

*Maynard v. State*,
685 S.W.2d 60 (Tex. Crim. App. 1985)............................................................19

*McFarland v. State*,
928 S.W.2d 482 (Tex. Crim. App. 1996), *cert. denied*, 519 U.S. 1119 (1997).. 21, 22

*McLeod v. State*,
450 S.W.2d 321 (Tex. Crim. App. 1970)...........................................................14

vi

*McNairy v. State*,
835 S.W.2d 101 (Tex. Crim. App. 1991).......................................................... 10, 13

*Michigan v. Tyler*,
436 U.S. 499 (1978) ...............................................................................................9

*Milburn v. State*,
Nos. 14-12-01059-CR, 14-12-01060-CR, 2014 WL 2048415 (Tex. App.—
Houston [14th Dist.] May 15, 2014, no pet.) (mem. op., not designated for
publication)...........................................................................................................11

*Missouri v. McNeely*,
133 S.Ct. 1552 (2013) ..................................................................................... 8, 9, 17

*Moralez v. State*,
450 S.W.3d 553 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd)........... 19, 20

*Mosley v. State*,
983 S.W.2d 249 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999)....21

*Moulden v. State*,
576 S.W.2d 817 (Tex. Crim. App. [Panel Op.] 1978) ..........................................12

*Parker v. State*,
206 S.W.3d 593 (Tex. Crim. App. 2006)..............................................................13

*Romero v. State*,
800 S.W.2d 539 (Tex. Crim. App. 1990)................................................................8

*Rylander v. State*,
101 S.W.3d 107 (Tex. Crim. App. 2003)..............................................................23

*Sibron v. New York*,
392 U.S. 40 (1968) .................................................................................................9

*State v. Steelman*,
93 S.W.3d 102 (Tex. Crim. App. 2002)................................................................12

*State v. Story*,
445 S.W.3d 729 (Tex. Crim. App. 2014)................................................................8

*State v. Villarreal*,
—S.W.3d—, No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014)..............................................................................................................9

*Stoddard v. State*,
475 S.W.2d 744 (Tex. Crim. App. 1972).....................................................9, 10

*Strickland v. Washington*,
466 U.S. 668 (1984) .................................................................................. 21, 23

*Sweeten v. State*,
693 S.W.2d 454 (Tex. Crim. App. 1985)...........................................................18

*Thomas v. State*,
336 S.W.3d 703 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) .....................8

*Thomas v. State*,
572 S.W.2d 507 (Tex. Crim. App. 1978)...........................................................18

*Thompson v. State*,
9 S.W.3d 808 (Tex. Crim. App. 1999)............................................................ 21, 22

*Turrubiate v. State*,
399 S.W.3d 147 (Tex. Crim. App. 2013)...........................................................10

*United States v. Robinson*,
414 U.S. 218 (1973) ........................................................................................8

*Vale v. Louisiana*,
399 U.S. 30 (1970) .......................................................................................10

*Wiede v. State*,
214 S.W.3d 17 (Tex. Crim. App. 2007)..............................................................8

*Williams v. State*,
No. 03-08-00663-CR, 2010 WL 2010748 (Tex. App.—Austin May 20, 2010, pet. ref'd) (mem. op., not designated for publication)........................................26

**RULES**

TEX. R. APP. P. 39.1 .......................................................................................... i

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant was charged by indictment with possession of a controlled substance between one and four grams, enhanced with two prior felony convictions. (C.R. at 12) Prior to trial, appellant's trial counsel filed a motion to suppress evidence which was carried with trial and denied by the trial court. (C.R. at 21-23; *see* 2 R.R. at 92; 3 R.R. at 6, 31) Appellant was convicted by a jury and pled true to the enhancement paragraphs. (C.R. at 115-16, 3 R.R. at 114-15) Appellant stipulated to his prior convictions and was sentenced by agreement to twenty-five years in the Texas Department of Criminal Justice, Institutional Division. (C.R. at 115-116; 3 R.R. at 116; State Exhibit 6) Appellant timely filed notice of appeal and the trial court certified his right of appeal. (C.R. at 119-21) Appellant timely filed a motion for new trial on sufficiency grounds, but there is no indication in the record that a hearing on the motion was requested or conducted. (C.R. at 126-27)

## STATEMENT OF FACTS

Houston Police Department (HPD) officer Meola was riding with a partner, Officer Benavidez, when he saw appellant drive from an exit ramp "all the way to the third lane without using a signal." (3 R.R. at 10, 12-13) A traffic stop was

initiated and appellant pulled over without incident, though he did not pull over immediately.  (3 R.R. at 13-14, 39-40)  When Officer Meola made contact with appellant, the driver and "only person in the car," Officer Meola "could immediately smell a strong odor of PCP" (phencyclidine) and "didn't catch a whiff of it until [he] got to the driver's side window."  (3 R.R. at 14-15)

Officer Meola testified he had been an HPD officer for eight years, assigned to the gang division of the crime reduction unit.  (3 R.R. at 7-8)  Officer Meola testified he had "[p]robably a couple hundred" prior narcotics investigations in his experience, though not all of them resulted in an arrest, and had encountered PCP "probably 50, 60" times previously.  (3 R.R. at 9-10, 14)  Though he had no formal training on recognizing the odor of PCP, Officer Meola testified his experience in recognizing PCP's odor was from "coming in contact with it while we're on the streets . . . ."  (3 R.R. at 15)  Officer Meola described PCP's odor as very strong, "almost like embalming fluid" and as a "strong chemical odor. . . ."  (3 R.R. at 15)

Once Officer Meola smelled PCP coming from the vehicle, he had appellant step out of the car and patted him down.  (3 R.R. at 16)  Officer Meola did not find any contraband on appellant during the pat down and "handed him off" to Officer Benavidez while Officer Meola searched the vehicle.  (3 R.R. at 16)  While Officer Meola did not find PCP in the vehicle, he smelled "a strong odor" under the seat and had his partner search the vehicle as well.  (3 R.R. at 17)  Officer Benavidez

also found no PCP in the vehicle, but could smell a strong odor of PCP coming from both appellant and the vehicle. (3 R.R. at 17, 73-74)

Appellant was wearing basketball shorts, a t-shirt, open-toed sandals, and socks. (3 R.R. at 18) Officer Meola testified, in his experience, basketball shorts do not have pockets and he could still smell an odor of PCP when he was standing next to appellant, so he thought appellant had PCP in his shorts or underwear. (3 R.R. at 18) At that point, Officer Meola stepped back and looked at appellant "up and down" and noticed a bulge in appellant's left sock. (3 R.R. at 18) Officer Meola testified "that's where I figured the PCP was going to be." (3 R.R. at 18) Officer Meola handcuffed appellant "because at that point, I didn't want to give my hand away because people on PCP can become violent from one second to the next." (3 R.R. at 19)

Officer Meola testified that appellant was acting "very methodical" and after being asked a question, "he would pause a couple of seconds and then he would just answer my question." (3 R.R. at 19) Officer Meola testified this behavior was "indicative of somebody that was in possession or had smoked PCP." (3 R.R. at 19) Officer Meola also testified that in his experience, he had made contact with people on PCP and they acted "like a zombie. They're there, but their lights aren't on," and, though he had never encountered someone on PCP who had been violent, he had "heard stories" about them being violent. (3 R.R. at 19-20) After

3

handcuffing appellant, Officer Meola pulled three PCP-dipped cigarettes in a plastic bag from appellant's sock.  (3 R.R. at 20, 27-28, 54)

The cigarettes were offered into evidence with no objection and, at that point, the trial court had the jury step out for a suppression hearing before admitting the cigarettes, noting on the record appellant's prior motion to suppress and his earlier request for the court "to rule on [the] motion at this time."  (3 R.R. at 21-23)  During the suppression hearing, Officer Meola testified his vehicle did not have a camera, he did not have a search warrant, and the bulge he saw in appellant's sock "wasn't like a golf ball size, but it was big enough to catch my attention."  (3 R.R. at 23-26)  Officer Meola did not think the bulge in appellant's sock was a weapon.  (3 R.R. at 26)  Officer Meola only patted down appellant's waistband and upper body because appellant was wearing sandals and Officer Meola was not "paying too much attention to his feet."  (3 R.R. at 26)  Officer Meola did not pat down appellant's socks or ankles or feet, but reached into his sock and pulled out the cigarettes.  (3 R.R. at 26-27)  Officer Meola testified he had probable cause based on "[t]he odor of PCP."  (3 R.R. at 27)

At the suppression hearing, appellant's trial counsel argued Officer Meola conducted a warrantless arrest of appellant and "failed to follow proper procedures."  (3 R.R. at 30)  Appellant's trial counsel argued Officer Meola "had absolutely no reason to search [appellant's] socks."  (3 R.R. at 30)  Appellant's trial

4

counsel argued the cigarettes and bag "do not create a bulge" and the "proper procedure would have been to perform a pat-down search of [appellant] to see if they were able to locate any type of contraband that would allow them to further search and that wasn't done . . . ." (3 R.R. at 30-31) The trial court denied appellant's motion to suppress. (3 R.R. at 32)

Officer Meola testified the PCP cigarettes had a tint to them, they were soaking wet when he found them, and they "smelled heavily of PCP." (3 R.R. at 33) Officer Meola retained custody of the cigarettes and stated that their odor was "so bad we put them in the trunk." (3 R.R. at 34-35) Before they left the scene, appellant asked to make a phone call and Officer Meola used appellant's phone to dial appellant's girlfriend's number as "a courtesy," and not as part of any interrogation or investigation. (3 R.R. at 35-36) Officer Meola testified appellant said on the phone that "he had gotten pulled over and 'they have my sherm,'" which Officer Meola knew from experience is "a street name for a [ ] cigarette that's been dipped in PCP." (3 R.R. at 36-37)

Officer Meola testified the bulge in appellant's sock was "in the front part of his sock" and he did not notice it earlier because of appellant's positioning when he exited the vehicle. (3 R.R. at 42-43) When asked if it would have been better to search appellant's "whole person" for officer safety, Officer Meola testified he was not paying attention to appellant's feet because he did not see a pistol handle in his

sock "or nothing like that." (3 R.R. at 43) Officer Meola testified he did not think the bulge in appellant's sock was a weapon and, at that point, he "had probable cause to believe that PCP was in his sock." (3 R.R. at 43)

Appellant testified during the guilt-innocence phase that he paid a friend ten dollars for the PCP cigarettes, intending to smoke them.[1] (3 R.R. at 77, 81-84) Appellant did not contest the stop or the search during direct examination and stated he paid for a less-than-one-gram amount of PCP. (3 R.R. at 77-79) On cross-examination, appellant testified PCP has a strong odor, then stated he was mistaken because "I always know when the police come to your car and they smell something, first thing they going to do is handcuff you and put you inside the police car." (3 R.R. at 89-90) Additionally, appellant contended: 1) the traffic stop was due to an inability to see his license plate, though the officer said he could see the license plate when he spoke to appellant; 2) his car did not smell like PCP; and 3) the officer was mistaken about appellant telling his girlfriend "they got my sherm." (3 R.R. at 88-91)

---

[1] Prior to trial, yet while still represented by his trial counsel, appellant filed his own "Motion Letter" with the trial court in which he asserted, among other things, the PCP cigarettes were found on the ground and that he did not possess them. (*See* C.R. at 71-73; *see also* 3 R.R. at 119-21)

6

## SUMMARY OF THE ARGUMENT

Because Officer Meola had probable cause to search appellant's person and exigent circumstances made the procurement of a search warrant impracticable, the trial court's denial of appellant's motion to suppress the drugs found in his sock was proper.

Because appellant failed to develop a record showing any deficient performance by his trial counsel, and because denial of the motion to suppress was proper, appellant failed to show his trial counsel was ineffective.

## RESPONSE TO APPELLANT'S SECOND POINT OF ERROR[2]

In his second point of error, appellant argues the trial court erred in denying the motion to suppress evidence regarding the search of his person.

A trial court's ruling on a motion to suppress is evaluated with a bifurcated standard of review, "giving 'almost total deference to a trial court's determination of historical facts' and reviewing *de novo* the court's application of the law of search and seizure." *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) (quoting *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997)). Almost total deference is also given to the trial court's rulings on "application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor."

---

[2] Because the response to appellant's first point of error is predicated, in part, on the response to appellant's second point of error, the State will address appellant's second point of error first.

*Thomas v. State*, 336 S.W.3d 703, 707 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007)).

Where the trial court does not make explicit historical fact findings regarding a suppression motion, appellate courts review the evidence in the light most favorable to the trial court's ruling, by assuming "the trial court made implicit findings of fact supported in the record that buttress its conclusion." *Carmouche*, 10 S.W.3d at 327-28. An appellate court "will uphold the [trial court's] judgment if it is correct on some theory of law applicable to the case, even if the trial judge made the judgment for a wrong reason." *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

## I. The trial court was within its discretion to deny appellant's motion to suppress the drugs found in his sock.

Generally, searches conducted without a warrant are *per se* unreasonable. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (citing *Maryland v. Dyson*, 527 U.S. 465, 466 (1999)). The Supreme Court has stated that a "warrantless search of the person is reasonable only if it falls within a recognized exception." *Missouri v. McNeely*, 133 S.Ct. 1552, 1558 (2013) (citing *see e.g., United States v. Robinson*, 414 U.S. 218, 224 (1973)); *see also State v. Villarreal*, —S.W.3d—, No. PD-0306-14, 2014 WL 6734178, at *8 (Tex. Crim. App. Nov. 26,

2014) (*reh'g granted*) ("[i]n general, to comply with the Fourth Amendment, a search of a person pursuant to a criminal investigation (1) requires a search warrant or a recognized exception to the warrant requirement, and (2) must be reasonable under the totality of the circumstances").

One exception is "that in some circumstances law enforcement officers may conduct a search without a warrant to prevent the imminent destruction of evidence." *McNeely*, 133 S.Ct. at 1559 (citing *see Cupp v. Murphy*, 412 U.S. 291, 296 (1973); *Ker v. California*, 374 U.S. 23, 40-41 (1963) (plurality opinion)). In such a circumstance, "a warrantless search is potentially reasonable because 'there is compelling need for official action and no time to secure a warrant.'" *Id.* (quoting *Michigan v. Tyler*, 436 U.S. 499, 509 (1978)).

"In order for a warrantless arrest or search to be justified, the state must show the existence of probable cause at the time the arrest or search was made and the existence of circumstances which made the procuring of a warrant impracticable." *Brown v. State*, 481 S.W.2d 106, 109 (Tex. Crim. App. 1972) (citing *e.g. Chimel v. California*, 395 U.S. 752 (1969); *Carroll v. United States*, 267 U.S. 132 (1925); *Stoddard v. State*, 475 S.W.2d 744 (Tex. Crim. App. 1972)). "Where probable cause is lacking, the challenged search will not be upheld merely because the exigencies of the situation precluded the obtaining of a warrant." *Id.* (citing *Sibron v. New York*, 392 U.S. 40 (1968); *Dyke v. Taylor Implement Mfg. Co.*,

391 U.S. 216 (1968)). "Likewise, no amount of probable cause can justify a warrantless search where the state has not met its burden of showing exigent circumstances." *Id.* at n.2 (citing *Coolidge v. New Hampshire*, 403 U.S. 443 (1971); *Vale v. Louisiana*, 399 U.S. 30 (1970); *Katz v. United States*, 389 U.S. 347 (1967); *Johnson v. United States*, 333 U.S. 10 (1948); *Fry v. State*, 493 S.W.2d 758, 760 (Tex. Crim. App. 1972); *Stoddard*, 475 S.W.2d 744).

Because the search of appellant's sock was supported by probable cause and exigent circumstances, the trial court properly denied his suppression motion.

### A. The odor of PCP emitting from appellant's vehicle provided probable cause to search appellant for drugs.

"Probable cause exists when reasonably trustworthy circumstances within the knowledge of the police officer on the scene would lead him to reasonably believe that evidence of a crime will be found." *Turrubiate v. State*, 399 S.W.3d 147, 151 (Tex. Crim. App. 2013) (citing *see McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991)). This Court "has [ ] held that 'the odor of [marijuana] alone is sufficient to constitute probable cause to *search a defendant's person*, vehicle, or objects within the vehicle.'" *Jordan v. State*, 394 S.W.3d 58, 64 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (quoting *Johnson v. State*, No. 01-10-00134-CR, 2011 WL 5428969, at *9 n.10 (Tex. App.—Houston [1st Dist.] Nov. 10, 2011, pet. ref'd) (mem. op., not designated for publication)).

Other appellate courts have also recognized that the odor of narcotics in a vehicle or on a defendant's person provides probable cause to search the defendant's person. *See Hitchcock v. State*, 118 S.W.3d 844, 850-51 (Tex. App.—Texarkana 2003, pet. ref'd); *Garcia v. State*, No. 13-12-00214-CR, 2013 WL 3326027, at *2 (Tex. App.—Corpus Christi June 27, 2013, no pet.) (mem. op., not designated for publication).

Probable cause to search has also been based upon the odor of narcotics other than marijuana. *See Ben v. State*, No. 01-03-00426-CR, 2004 WL 966337, at *4 (Tex. App.—Houston [1st Dist.] May 6, 2004, pet. ref'd) (mem. op., not designated for publication) ("the odor of fresh crack cocaine constituted probable cause to search the entire vehicle"); *Milburn v. State*, Nos. 14-12-01059-CR, 14-12-01060-CR, 2014 WL 2048415, at *3 (Tex. App.—Houston [14th Dist.] May 15, 2014, no pet.) (mem. op., not designated for publication) (noting, in cocaine case, "[i]t is well settled . . . that the odor of contraband can provide probable cause to search an automobile").

Here, Officer Meola testified he smelled a very strong odor of PCP coming from appellant's car, in which appellant was the sole occupant. (3 R.R. at 14-15) Officer Meola could describe the odor of PCP and testified as to his numerous encounters with PCP during his experience as a police officer. (3 R.R. at 14-15) Akin to the smell of marijuana coming from a vehicle, the smell of PCP coming

11

from appellant's vehicle gave Officer Meola probable cause not only to search the vehicle, but also appellant's person for PCP. *See Moulden v. State*, 576 S.W.2d 817, 819-20 (Tex. Crim. App. [Panel Op.] 1978) (finding officers had probable cause to search defendant's vehicle and overnight bag when officers smelled marijuana and established their knowledge of what the contraband smelled like); *Jordan*, 394 S.W.3d at 65 (finding odor of marijuana emanating from vehicle gave officers probable cause to search vehicle and passengers, "regardless of [officer's] statement that he was conducting a pat-down for weapons").

Because the odor of PCP coming from appellant's vehicle provided probable cause for the search of appellant's person for contraband, appellant's arguments that he: 1) was not under arrest at the time of the search, 2) was, alternatively, under unlawful arrest at the time of the search, and 3) the search of his sock was an impermissible *Terry* frisk, are all irrelevant in this case. (*See* Appellant's Brief at 11-15) Appellant's reliance on *State v. Steelman* and *Estrada v. State* for the proposition that the odor of drugs alone does not establish particularized probable cause that a defendant possessed those drugs, is also misplaced, as *Steelman* and *Estrada* involve warrantless search and seizure in a residence. *See Estrada*, 154 S.W.3d 604 (Tex. Crim. App. 2005); *Steelman*, 93 S.W.3d 102 (Tex. Crim. App. 2002); (Appellant's Brief at 13) Instead, this Court noted "a different rule has been recognized in situations where the odor of marijuana has been detected in a

12

confined space . . . [in that] particularized suspicion is not required when the odor of marijuana is detected inside a small, enclosed area such as a car." *Jordan*, 394 S.W.3d at 64 (citing *Parker v. State*, 206 S.W.3d 593, 597 n.11 (Tex. Crim. App. 2006)).

Because the odor of narcotics in a vehicle provides probable cause to search the vehicle's occupants, and, additionally in this case, Officer Meola found no PCP in appellant's vehicle, yet still smelled the strong odor of PCP and noticed appellant's perceived demeanor of being under the influence of PCP, he had sufficient probable cause to search appellant's person. *See Buquo v. State*, No. 14-04-00956-CR, 2006 WL 914623 (Tex. App.—Houston [14th Dist.] Apr. 6, 2006, pet. ref'd) (mem. op., not designated for publication).

## B. The warrantless search of appellant's sock was reasonable and permissible due to exigent circumstances.

"[T]hree categories of exigent circumstances that justify a warrantless intrusion by police officers [include]: 1) providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; 2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; and 3) preventing the destruction of evidence or contraband." *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007) (citing *McNairy*, 835 S.W.2d at 107).

13

Additionally, "the law is well settled in this jurisdiction that when an officer has probable cause to believe that an offense is being committed in his presence . . . he has the right to take reasonable measures to insure that the incriminating evidence is not destroyed and that reasonable physical contact is one of those measures." *Hernandez v. State*, 548 S.W.2d 904, 905 (Tex. Crim. App. 1977) (citing *McLeod v. State*, 450 S.W.2d 321 (Tex. Crim. App. 1970); *Donley v. State*, 435 S.W.2d 518 (Tex. Crim. App. 1969); *Johnson v. State*, 397 S.W.2d 441 (Tex. Crim. App. 1965); *see also Espinoza v. United States*, 278 F.2d 802 (5th Cir. 1960), *cert. denied*, 364 U.S. 827 (1960)).

Because appellant could have damaged or hidden the PCP he hid in his sock before officers could obtain a warrant, exigent circumstances permitted the reasonable search of his sock, already supported by probable cause, without a warrant in order to prevent appellant's destruction of the contraband. Additionally, Officer Meola's reaching into appellant's sock to obtain the PCP cigarettes after he saw the noticeable bulge in appellant's sock was reasonable physical contact and a minimal intrusion upon appellant.

In *Buquo v. State*, the Fourteenth Court of Appeals addressed this issue under similar facts. *See* 2006 WL 914623. In *Buquo*, the defendant, driver and sole vehicle occupant, stopped for a traffic violation, appeared "'extremely fidgety and nervous' and kept moving his hands around, rubbing his face, and putting his hands

14

in his pockets." *Id.* at *1. The officer had the defendant put his hands on a vehicle's trunk and conducted a *Terry* frisk, finding no weapons. *Id.* The officer smelled the strong odor of marijuana during the pat down and the defendant admitted to smoking marijuana at a friend's house. *Id.* The officer then reached into the defendant's pockets, "'because [he] had the belief that he might have narcotics on his person'" and found a cigarette pack with marijuana residue inside and, in another pocket, a small plastic wrapper with black tar heroin. *Id.*

The Court held that, from the totality of the circumstances, the search "was supported by probable cause" and "[b]ecause the [officer] was also faced with the possibility that [the defendant] could destroy evidence in the time it would take to procure a search warrant, the intrusion into [the defendant's] pockets was minimal when weighed against the importance of preserving evidence of a crime." *Id.* at *3 (citing *see Hitchcock*, 118 S.W.3d at 850-51).

In *Hitchcock v. State*, the Texarkana Court of Appeals evaluated a case in which an officer detected smoke and the odor of marijuana coming from a suspicious vehicle and had its three occupants step out, one of which fled. 118 S.W.3d 844, 847. The officer's partner pursued the fleeing passenger while the officer handcuffed the defendant and the third passenger and placed them in his patrol car while he searched the vehicle, finding marijuana residue and alcohol. *Id.* The officer then removed the defendant and the other passenger from the patrol car

and searched them. *Id.* The officer performed a pat down search of the defendant, then reached into his pocket and found a gum wrapper with crack cocaine. *Id.*

The Texarkana Court of Appeals found that, given the totality of the circumstances, the officer "had probable cause to believe that any evidence of drugs on [the defendant's] person could have been destroyed during the time it would have taken to obtain a search warrant." *Id.* at 850-51. The Court reiterated that the odor of marijuana is sufficient to constitute probable cause to search a person, and noted "the need for preservation of evidence was considerable, and the physical intrusion experienced by [the defendant] was minimal." *Id.* at 851.

In this case, after Officer Meola found no PCP when he patted down appellant and searched his car, he still smelled the strong odor of PCP and formed the reasonable belief that appellant had PCP on his person when he saw the bulge in appellant's sock and "was still getting an odor of PCP" as he stood next to appellant. (3 R.R. at 16-19) Though appellant was detained in handcuffs before Officer Meola pulled out the drugs, as was the defendant in *Hitchcock*, Officer Meola testified he handcuffed appellant for safety reasons, as he noted appellant appeared to have been under the influence of PCP and could have become violent. (*See* 3 R.R. at 19-20) Additionally, Officer Meola testified that the cigarettes were still "soaking wet" when he found them. (3 R.R. at 33)

Given the totality of the circumstances, including: 1) the strong odor of PCP emanating from the vehicle, 2) the inability to find the drugs inside the car, 3) the noticeable bulge in appellant's sock, 4) appellant's demeanor, 5) Officer Meola's information that suspects under the influence of PCP could become violent, and 6) the possibility that appellant could have damaged or destroyed the still-wet PCP cigarettes, likely drying as time went on, in the time it would have taken to obtain a warrant, Officer Meola's search of appellant's sock was permissible due to exigent circumstances. Additionally, the intrusion into appellant's clothing to search for contraband was minimal given the "importance of preserving evidence of a crime." *See Buquo*, 2006 WL 914623, at \*3.[3]

Because the search of appellant's sock was supported by probable cause and exigent circumstances, the trial court was within its discretion to deny appellant's motion to suppress. Therefore, appellant's second point of error should be overruled.

**II.    Even if this Court finds the PCP cigarettes were erroneously admitted into evidence, the admission was harmless error.**

---

[3] While appellant cites to *State v. Villarreal* and *Missouri v. McNeely*, and briefly references searches of individuals in the form of driving-while-intoxicated case blood draws, such references are not on point with this case, as those cases involved "a compelled physical intrusion beneath [a defendant's] skin . . . an invasion of bodily integrity implicat[ing] an individual's 'most personal and deep-rooted expectations of privacy.'" *McNeely,* 133 S.Ct. at 1558; (*see* Appellant's Brief at 16-17). This case, however, involves only a search into a sock after the officer already had probable cause to search and noticed an item was being kept there.

17

Generally, "'improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged.'" *Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) (quoting *Crocker v. State*, 573 S.W.2d 190, 201 (Tex. Crim. App. [Panel Op.] 1978)). Where a defendant is the source of evidence which is the same as improperly-admitted evidence, two exceptions to this rule include: 1) that "the defendant's testimony, which constituted other evidence of the fact that was proved over the defendant's objection, was impelled by the State's introduction of evidence that was obtained in violation of the law," and 2) "that the defendant sought to meet, destroy, or explain" the improperly-admitted evidence "by introducing rebutting evidence."[4] *Id.* at 718-19 (citing *see Sweeten v. State*, 693 S.W.2d 454 (Tex. Crim. App. 1985); *Thomas v. State*, 572 S.W.2d 507, 512 (Tex. Crim. App. 1978)).

In this case, after appellant's suppression motion was denied, he testified during the guilt-innocence phase of trial. (3 R.R. at 77-97) During his direct testimony, appellant admitted to purchasing, possessing, and intending to smoke the PCP cigarettes admitted into evidence earlier at trial. (3 R.R. at 77-78, 81-82) During direct examination, appellant agreed he was not "contesting the fact that the stop was for a traffic violation" or that the cigarettes were found by the officers in

---

[4] The Court of Criminal Appeals also noted a third exception "to the rule of waiver, which is . . . that a defendant may respond to 'evidence of an extraneous offense' admitted over objection."

18

his sock. (3 R.R. at 77-78) Although appellant later stated on cross-examination that the traffic stop occurred differently from how the officer testified, and that his car did not smell like PCP, he did not challenge or rebut any other facts regarding the search of his vehicle or person that contradicted Officer Meola's testimony.[5] (*See* 3 R.R. at 88-91) In fact, appellant's main assertion that was at odds with prior testimony regarded the amount of PCP he purchased, asserting that he bought a less-than-one-gram amount of PCP. (3 R.R. at 78-79, 85)

In *Moralez v. State*, the Fourteenth Court of Appeals held that any error in admitting a defendant's statements and evidence obtained as a result of those statements was "rendered harmless by [the defendant's] own testimony" at trial. 450 S.W.3d 553, 564 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). In *Moralez*, the defendant was tried for murder and filed a pre-trial motion to suppress that was denied by the trial court. *Id.* at 564. During trial, the defendant testified during the guilt-innocence phase of trial and admitted to killing the complainant, claiming self-defense. *Id.* at 557, 564.

The Court noted that the defendant "did not argue at trial, nor [did] he argue on appeal, that his testimony was impelled by the introduction of allegedly illegally obtained statements and evidence" and also noted "the record clearly [showed] that

---

*Leday*, 983 S.W.2d at 718 n.9 (citing *Maynard v. State*, 685 S.W.2d 60, 66 (Tex. Crim. App. 1985)).

the purpose of [the defendant's] testimony was to present his claim of self-defense, not to overcome the impact of the State's evidence or to rebut it." *Id.* at 564. Therefore, the Court found that the defendant did not meet the abovementioned exceptions and that "any error in admitting the statements or evidence obtained therefrom was rendered harmless by [his] own testimony." *Id.*

The same circumstances are present here in appellant's case. Even if this Court were to find that the PCP cigarettes were erroneously admitted into evidence, appellant's own testimony that he did possess the PCP cigarettes renders any such error in admitting the cigarettes harmless. The record in this case shows appellant testified to establish that he possessed less than one gram of PCP. (*See* 3 R.R. at 78-79, 85) Appellant never asserted at trial or on appeal that he was impelled to testify to overcome the impact of the State's evidence regarding the search of his sock or to present rebutting evidence to meet, destroy, or explain the State's evidence regarding the search of his sock. *See Moralez*, 450 S.W.3d at 564; *see also Leday*, 983 S.W.2d at 715, 719-20 (finding defendant's testimony did not waive error regarding his motion to suppress when he testified he possessed the contraband, but he also testified that "he took issue with how the evidence was recovered," his testimony regarding the "stop of the vehicle and the searches and

---

[5] Appellant also testified on cross-examination that he did not recall telling his girlfriend the officers found his "sherm" after he was arrested and thought that the officers were mistaken about that statement. (3 R.R. at 88)

arrests was different from that of the officers," and he argued in his supplemental brief that his testimony was "impelled by the illegal action of the State").

Therefore, because any error in admitting the PCP cigarettes was rendered harmless by appellant's own testimony, this Court should overrule appellant's second point of error.

## RESPONSE TO APPELLANT'S FIRST POINT OF ERROR

In his first point of error, appellant argues that his counsel was ineffective because he was "not [ ] familiar with the law of search and seizure as it applies to warrantless searches of persons." (Appellant's Brief at 2)

To prevail on an ineffective assistance of counsel claim, a defendant must show by preponderance of the evidence, 1) "that counsel's performance . . . fell below an objective standard of reasonableness," and 2) there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson v. State*, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999) (citing *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), *cert. denied*, 519 U.S. 1119 (1997), *abrogated on other grounds*, *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999); *Ex parte Menchaca*, 854 S.W.2d 128, 131 (Tex. Crim. App. 1993); *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)); *see Strickland v. Washington*, 466 U.S. 668 (1984).

"Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 813 (citing *McFarland*, 928 S.W.2d at 500). Furthermore, "[a]n appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Id.* (citing *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991)). "[I]t is possible that a single egregious error of omission or commission by appellant's counsel constitutes ineffective assistance." *Id.* (citing *Jackson v. State*, 766 S.W.2d 504, 508 (Tex. Crim. App. 1985), *modified on other grounds on remand from U.S. Supreme Court*, *Jackson v. State*, 766 S.W.2d 518 (Tex. Crim. App. 1988)). However, "[r]eviewing courts are obliged to defer to strategic and tactical decisions of trial counsel, so long as those decisions are informed by adequate investigation of the facts of the case and the governing law." *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013) (citing *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990)). "Moreover, an accused is not entitled to representation that is wholly errorless, and a reviewing court must look to the totality of the representation in gauging the adequacy of counsel's performance." *Id.* (citing *Welborn*, 785 S.W.2d at 393).

"[J]udicial scrutiny of counsel's performance must be highly deferential and [ ] a reviewing court 'must indulge a strong presumption that counsel's conduct

22

falls within the wide range of reasonable professional assistance[.]'" *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (quoting *Strickland*, 466 U.S. at 689). "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Id.* at 111 (citing *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002)).

I. **Appellant failed to show his trial counsel's performance fell below an objective standard of reasonableness.**

Appellant's trial counsel filed a pre-trial motion to suppress evidence alleging appellant was "not under arrest and the officer was not conducting a legal pat-down of [appellant]." (C.R. at 21-22)  The trial court specifically informed counsel that the jury would hear the evidence regarding the motion to suppress and later make a ruling. (2 R.R. at 92; 3 R.R. at 6)  Although counsel later stated "no objection" to the PCP cigarettes offered into evidence, the trial court did not admit the evidence, but removed the jury for the suppression hearing. (3 R.R. at 21-22) The trial court noted on the record defense counsel's prior requests for a hearing and ruling regarding his motion to suppress. (3 R.R. at 23)

During the hearing, appellant's trial counsel questioned Officer Meola regarding, among other things, appellants' clothing, the lack of a search warrant, the odor of PCP the officer smelled, the lack of drugs found in appellant's car, the pat down of appellant's waistband rather than his socks, and the bag inside which

the officer found the PCP cigarettes. (3 R.R. at 23-29) Appellant's trial counsel then asserted that the arrest was without a warrant, argued that the officer had no reason to search appellant's socks, contested that the drugs would create a bulge in appellant's socks, and stated that there should have been a proper pat down "to see if they were able to locate any type of contraband that would allow them to further search and that wasn't done." (3 R.R. at 30-31). Appellant's trial counsel then moved for the PCP cigarettes to be suppressed and the trial court denied his motion. (3 R.R. at 31)

From the record before this Court, appellant's trial counsel appropriately filed the motion to suppress evidence on the grounds upon appellant now relies in his appeal. (*See* C.R. at 21-22) Appellant's trial counsel requested a hearing outside the presence of the jury prior to testimony and questioned the officer appropriately regarding the circumstances surrounding the search of appellant's socks. Appellant's assertion that his trial counsel made no argument, orally or in writing, that appellant was not under arrest and did not assert an illegal search claim is incorrect. (*See* C.R. at 21; Appellant's Brief at 19, 22)

The record is silent as to any rationale regarding trial counsel's arguments made during the motion to suppress. Furthermore, appellant bases his complaint regarding his counsel's actions on the erroneous argument that there is no circumstance in which a warrantless search of a non-arrested suspect for

24

contraband is permissible. (*See* Appellant's Brief at 18-21) This argument, as discussed above, is simply not the case. The fact that appellant's trial counsel did not make the same erroneous argument at trial does not now render his conduct deficient.

Because appellant failed to establish that his trial counsel's conduct fell below an objective standard of reasonableness, he has not shown his counsel rendered ineffective assistance. Therefore, this Court should overrule appellant's first point of error.

## II. Appellant failed to show that any deficient performance by his trial counsel would have changed the result of the proceeding.

Even if this Court finds appellant's trial counsel's conduct fell below an objective standard of reasonableness, the search of appellant's sock was permissible and the trial court's denial of the suppression motion was proper. Therefore, even if appellant somehow showed his trial counsel's argument at the suppression hearing rendered his conduct deficient, because the motion to suppress was properly denied, he failed to show that the complained-of conduct changed the outcome of the proceeding or caused him harm. *See Lemons v. State*, 135 S.W.3d 878, 883-84 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding, even though defense counsel's conduct fell below an objectively reasonable professional standard, the defendant did not satisfy the second *Strickland* prong of harm,

"[b]ecause the trial court did not err in denying appellant's motion to suppress"); *see also Williams v. State*, No. 03-08-00663-CR, 2010 WL 2010748, at \*3 (Tex. App.—Austin May 20, 2010, pet. ref'd) (mem. op., not designated for publication) ("[a]ssuming that counsel was ineffective[,] . . . because the traffic stop and search were legal and the trial court properly overruled appellant's motion [to suppress], [the defendant] has not shown prejudice in his attorney's statement of 'no objection' to the drug evidence").

Therefore, because appellant failed to show his trial counsel was ineffective, this Court should overrule his first point of error.

## CONCLUSION

It is respectfully submitted that all things are regular and the conviction should be affirmed.

<div style="margin-left: 50%;">

**DEVON ANDERSON**
District Attorney
Harris County, Texas


/s/ Patricia McLean
**PATRICIA MCLEAN**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
TBC No. 24081687
mclean_patricia@dao.hctx.net

</div>

26

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been sent to the following email address via e-filing:

Tom Moran
Attorney for Appellant
tom6294@aol.com

/s/ Patricia McLean
**PATRICIA MCLEAN**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 24081687

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of 6,185words, based upon the representation provided by the word processing program that was used to create the document.

/s/ Patricia McLean
**PATRICIA MCLEAN**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 24081687

Date: 7/23/2015